### THE STATE *v.* JAMES C. KEITH.

In a case where a prisoner moved a Court for a discharge on the ground that his offense was within the provisions of a certain Amnesty act, and such allegation was admitted by the Solicitor for the State : *held,* that even if the act required *a plea,* in order to show its application to the case before the Court, the record exhibited a substantial compliance with such requirement.

The Ordinance of 1868, ch. 29, repealing to the Amnesty act of 1866, ch. 3, is substantially an *ex post facto* law, inasmuch as it renders criminal what before its ratification was not so, and takes away from persons their vested rights to immunity.

(*State* v. *Cook,* Phil. 535 and *State* v. *Blalock, Ib.* 240, cited and approved.)

MOTION to discharge a prisoner, heard before *Cannon J.,* at Fall Term 1868 of the Superior Court of BUNCOMBE.

The prisoner was held under seven different charges of murder. The *case* stated that this was an indictment for the murder of Roderic Shelton, in Madison county in 1863, and had been removed for trial to Buncombe upon affidavit of the prisoner. The defendant by his counsel, moved the Court for his discharge, upon the ground that he was acting as an officer in the Confederate States' military service when the alleged homicide took place, and he alleged that his case came

within the provisions of the Amnesty act of 1866-'67. It was admitted by the Solicitor that the case came within that act, but he submitted that that act had been repealed by an Ordinance of the Convention of 1868.

The Court being of opinion that the Amnesty act had been repealed, declined to allow the motion, and the prisoner appealed.

*Phillips & Battle,* for the appellant.

A general amnesty act need not be pleaded. *United States* v. *Wilson,* 7 Pet. 150; 3 Bl. 401; *State* v. *Blalock,* Phil. 242. A prisoner cannot even waive its benefit, Hawk. P. C.

An amnesty act is irrepealable. By comparing the entry of a plea of Parliamentary pardon, in 3 Co. Inst. 234 with that of pardon by the Crown, in Co. Ent. 356, it will be seen that the former is an *acquittal.* Such acts are remnants of the ancient jurisdiction of Parliaments and Legislatures to try offenders. Our Constitution forbids *attainders,* but leaves the right to *acquit.*

This case shows that the definition of *ex post facto* laws in *Calder* v. *Bull,* 3 Dall. 386, does not cover all varieties of such legislation; the Ordinance in question plainly violating that prohibition.

It also violates the XIV Article, recently adopted, as regards the prisoner's *immunities.*

When a law is a contract, a repeal of it cannot take away a vested right. The Binghamton Bridge, 3 Wall. 51.

*Attorney General, contra.*

RODMAN, J. As several other indictments against the prisoner are somewhat loosely referred to in the transcript of the record sent to this Court; it is proper to say, that the indictment against him for the murder of Roderick Shelton, is the only one which appears to have been adjudicated in the Superior Court, and it is the only one which is in this Court. Our decision, and the observations made in this opinion are confined to that case.

Two questions arise on the record, and have been argued by counsel:

1. Did the prisoner, in a regular manner, claim the benefit of the Amnesty Act of 1866-'67, ch. 3, p. 6 ?

2. How was he affected by the repeal of that Act by the Ordinance of 1868, ch. 29, p. 69 ?

We have considered the case with the care which its importance deserves.

Section 1, of the act of 1866 contains a full and unequivocal pardon for all "homicides and felonies" committed by officers or soldiers of the late Confederate States, or by officers or soldiers of the United States, " done in the discharge of any duties imposed on him, purporting to be by a law of the State or late Confederate States Government, or by virtue of any order emanating from any officer, &c."

Section 2 enacts: " That in all cases where indictments are now pending, either in the County or Superior Courts, if the defendant can show that he was an officer or private in either of the above named organizations at the time, it shall be presumed that he acted under orders, until the contrary shall be made to appear."

The prisoner alleged that his case came within the provisions of that act, (see *State* v. *Cook*, Phil. 535,) and moved his discharge. The solicitor admitted the allegation of fact. If a formal plea were necessary, we should be compelled, from the practice which has prevailed universally in this State, to take the allegation of the prisoner as equivalent to such plea, and the solemn admission of the officer of the State binds the State as an admission of its truth. It is said in Hawkins, Book 2, ch. 37, § 61, p. 550: " But it seems agreed that the Court is so far bound to take notice *ex officio* of a general pardon by parliament, which extends to all persons in general without exception, that it cannot proceed against any person whatsoever, as to any of the offences pardoned, though he he so far from pleading it, or praying the benefit of it, that he does all he can to waive it."

Blackstone says (Book 4, p. 401:) " A pardon by act of

parliament is more beneficial than by the King's charter, for a man is not bound to plead it, but the Court must, *ex officio,* take notice of it, neither can he lose the benefit of it by his own laches or negligence, as he may of the King's charter of pardon." Judge Marshall, in *United States* v. *Wilson,* 7 Peters 163, says: "The reason why a Court must, *ex officio,* take notice of a pardon by act of parliament, is that it is considered as a public law; having the same effect on the case as if the general law punishing the offence had been repealed or amended."

In *State* v. *Blalock,* Phil. 240, the act of 1866 was passed after the conviction of the defendants, and their appeal to this Court, and the Court took judicial notice of the Act, and seeing from the record that the case of the prisoners came within it, ordered their discharge.

All that could have been necessary for the prisoner to do in this case, was to show that he was an officer or soldier, and that the felony was committed in the discharge of his duties as such, and we are clearly of opinion that this was sufficiently alleged; indeed no objection of that kind was taken below, and it may, therefore, admit of some doubt, whether it could properly be taken here.

The more important question remains. The Judge put his refusal to discharge the prisoner entirely upon the effect of the ordinance of 1868. There are cases in which a pardon from the Chief Executive has been held void by the Courts, as having been obtained by fraudulent representations, and probably a special pardon from a Legislature might be avoided on the like grounds. But we have searched in vain for any instance, in which a parliamentary, or legislative, or other act of general amnesty and pardon, has been revoked. We find no decided case, nor even any dictum referring to such a circumstance. We are left therefore to determine on its effects from general principles alone.

The effects of a pardon are well settled in law: as far as the State is concerned, they destroy and entirely efface the previous offence; it is as if it had never been committed.

Bishop says it is " a remission of guilt. " not only of the punishment of guilt.   1 Bishop Cr. L. §749.

In the *United States* v. *Wilson*, 7 Peters 163, it is likened by Marshall, C. J., to a deed vesting rights: the right, at least, to immunity for the previous offence.   It is therefore a contract between the State and the offender, of the most solemn character; on the faith of which it may be that he has come within the jurisdiction.

If the effect contended for,—to revive the previous offences of the prisoner—can be attributed to the Ordinance of 1868, it can only be, because the Convention of 1868 was subject neither to the Constitution of the United States, nor to the previous Constitution of North Carolina, nor to the fundamental rules of public law and morals, which bind every political community, whatever may be its form of government; but was absolutely lawless and unrestrained.   We do not think the Convention of 1868 ever claimed such powers, and we can by no means admit them.   It was assembled under the Reconstruction Acts of Congress to form a new Constitution for the State, and as representing the people of North Carolina, it had general legislative powers.   It could change the old State Constitution as it pleased, but the power to make a new one was at least limited by the proviso, that it should be " republican in form. "   The ordinance in question is not found in the Constitution, but is a part of the legislative action of the Convention.   The legislative power of the Convention was limited, at least, by those sacred principles which are contained in the Constitution of the United States and of every American State; that no *ex post facto* law shall be passed, and that no man shall be deprived of vested rights, or of life and liberty, except according to law.   Amendments to Constitution of the United States, Art. V,   Art. I §9, ch. 3, Bill of Rights of North Carolina, §§12, 24.   New Constitution, Bill of Rights, §§32, 35.

These great principles are inseparable from American government and follow the American flag.   No political assemblage under American law, however it may be summoned, or by whatever name it may be called, can rightfully violate

them, nor can any Court sitting on American soil sanction their violation. Congress could not give to the Convention greater powers than itself possessed.

The ordinance in question was substantially an *ex post facto* law; it made criminal what, before the ratification of the ordinance was not so; and it took away from the prisoner his vested right to immunity.

We think the Judge should have discharged the prisoner. Let this opinion be certified, &c.

PER CURIAM. Judgment reversed.