## UNITED STATES v. SALBERG.

(District Court, N. D. Ohio, E. D.   February 13, 1923.)

No. 7348.

1. **Criminal law ⚖147—Indictment held to show prosecution for failure to register under Selective Service Act was barred.**

An indictment charging that defendant was a person required by Selective Service Act May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), to register on June 5, 1917, and that he failed so to do, which indictment was not found until December 20, 1922, shows on its face that the prosecution was barred by limitations, since the act provides for no limitation on a prosecution, and it is therefore governed by Comp. St. § 1708, as amended by Act Nov. 17, 1921, limiting prosecutions to three years, except with respect to offenses involving the defrauding of the United States, or any agency thereof.

2. **Statutes ⚖220—Joint resolution, declaring previous acts shall not be construed in certain way, held only the expression of an opinion as to what they may mean and not equivalent to enactment of law with a retroactive effect.**

A joint resolution, declaring that none of the provisions of certain specified acts or any other acts or joint resolutions or proclamations shall be construed as having a specified effect, is only the expression by Congress of its opinion as to what the acts, resolutions, and proclamations may mean, and is not equivalent to declaring they are to be given a specific or different meaning, nor the equivalent of the enactment of a law with a retroactive effect.

3. **Criminal law ⚖151½—Subsequent acts and resolutions held not to terminate liability to prosecution under Selective Service Act.**

None of the acts referred to in the joint resolution of March 8, 1922, declaring that the provisions of Act May 18, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044b), Act June 15, 1917, tit. 1, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212d), or any other act or joint resolution of Congress or proclamation by the President, shall be construed as terminating before the expiration of three years after the proclamation of peace, the amenability to prosecution of any person who failed to comply with Act May 18, 1917, considering, as referred to by the general language, the presidential proclamation of November 14, 1921, and the joint resolutions of July 2, 1921, and of March 3, 1921, would have the effect, in the absence of the provision, which it is declared they shall not have, since none of them contain any provisions which would affect prosecutions under Act May 18, 1917, which was not repealed by any of them.

4. **Criminal law ⚖151½—Joint resolution declaring construction of certain acts held not to suspend limitation of prosecution.**

The joint resolution of March 8, 1922, providing that certain acts, resolutions, and proclamations therein referred to shall not be construed as terminating, before the expiration of three years after the proclamation of peace, the amenability to prosecution and trial for violation of Selective Service Act May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), does not suspend the statute of limitations against such prosecutions.

5. **Constitutional law ⚖53—Legislature cannot determine meaning of existing law.**

The determination of the true state and meaning of the existing law is a judicial and not a legislative question, since a Legislature may enact a law, and, if not forbidden by the Constitution, may make it apply retroactively, but it cannot declare what the law was in the past.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles Salberg was indicted for failing to register as required by the Selective Service Act, and he demurs to the indictment. Demurrer sustained.

Gerard J. Pilliod, Asst. U. S. Atty., of Toledo, Ohio.
H. C. Pontius, of Canton, Ohio, for defendant.

WESTENHAVER, District Judge. [1] Defendant demurs generally to the indictment, and in support thereof urges that the crime alleged appears by the face of the indictment to be barred by the statute of limitations. The indictment charges that the defendant, being a person required by the Act of May 18, 1917, commonly known as the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), to register on June 5, 1917, as required by the President's proclamation, failed and refused, unlawfully and feloniously, so to do. He is not charged with failing or refusing to register at any other or later registration date.

Selective Service Act, § 5 (section 2044e), makes it an offense for any person, thus required to register, to willfully fail or refuse to present himself for registration or to submit thereto as required by the act. The offense is declared to be a misdemeanor, punishable by imprisonment for not more than one year. No limitation upon a prosecution is provided by that act. The applicable statute of limitations is therefore section 1708, U. S. Comp. Stat., as amended by Act Nov. 17, 1921, c. 124, 42 Stat. 220. This section provides that:

"No person shall be prosecuted, tried, or punished for any offense * * * unless the indictment is found * * * within three years next after such offense shall have been committed."

The amendment of November 17, 1921, inserts a proviso extending the period of limitations to six years with respect to offenses involving the defrauding or attempting to defraud the United States or any agency thereof. The original and amended section further provides that it shall apply to offenses where the existing statute of limitations has not fully run, but not to offenses which are already barred by the provisions of existing laws. Such being the nature of the offense charged, and such being the applicable provisions of the statute of limitations, it must be held that the indictment is not good. The offense thereby charged, as alleged to have been committed under the law and the presidential proclamation, could only have been committed on or about the 5th of June, 1917. The offense charged, as well as the offense committed, is not a continuing offense. The indictment was not found until December 20, 1922. Prosecution of the offense charged was barred not later than June, 1920.

The government, to avoid this conclusion, invokes the provisions of a joint resolution of Congress approved March 8, 1922 (42 Stat. 421). It is quoted in full in the margin.[1] This is a declaratory and not an en-

[1] "Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, that none of the provisions contained in section 2 of the Act of May 18, 1917 (Fortieth Statutes, page 77), or in section 4 of the Act of June 15, 1917 (Fortieth Statutes, page 217), or in any other act or joint resolution of Congress, or in any proclamation

287 F.—14

acting resolution. It does not create any new offenses nor modify any existing laws. It may be entitled to respect as an expression of legislative opinion, but one must look to acts, joint resolutions, and proclamations comprehended within its descriptive language in order to determine what the effect thereof may be.

Section 2 of the Act of May 18, 1917 (Comp. St. 1918; Comp. St. Ann. Supp. 1919, § 2044b), referred to therein, relates to the manner of raising and maintaining of troops in view of the existing emergency declared by section 1 (section 2044a), namely, the war between the Imperial German Government and the United States, declared by joint resolution April 6, 1917 (40 Stat. 1). Section 2 creates no crimes in and of itself. It provides that all persons who shall enlist or be drafted into the military service of the United States shall be subject to all regulations governing the Regular Army, so far as applicable. This no doubt makes such persons subject to the Articles of War and triable therefor before military tribunals. It further provides that all persons thus enlisted or drafted, whose permanent retention in the military service on the active or retired list is not contemplated by existing law, shall be required to serve for the period of the existing emergency, unless sooner discharged. It does not, however, provide for the discharge of such persons automatically at the termination of the war or upon proclamation of peace.

Section 4 of title 1 of the Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212d), referred to therein, is a part of what is commonly called the Espionage Act. This section makes it an offense for two or more persons to conspire to violate sections 2 and 3 of title 1 of the Espionage Act (sections 10212b, 10212c), and provides a distinctive punishment for such conspiracies, leaving the general provisions of section 37, Criminal Code of the United States (Comp. St. § 10201), to apply to all conspiracies to violate other provisions of the Espionage law. All the other acts or joint resolutions of Congress or presidential proclamations, referred to in general language, are difficult of identification. One no doubt is the presidential proclamation dated November 21, 1921, declaring that the war between the Imperial German Government and the United States had terminated July 2, 1921. Another, no doubt, is the joint resolution approved July

heretofore issued by the President, or in any proclamation of peace that may hereafter be issued by the President, shall be construed as terminating the military or naval status of any person who, having been drafted or having voluntarily enlisted for the period of the emergency due to the World War in the military or naval service of the United States, or having been commissioned as an officer for the period of said emergency in the military or naval forces of the United States, thereafter deserted such military or naval service, or as terminating before the expiration of three years after the date of the President's proclamation of peace as required by section 4 of the Act of June 15, 1917 (Fortieth Statutes, page 217), exclusive of all periods of absence from the jurisdiction of the United States, the amenability to prosecution and trial of any person who willfully failed or refused to comply with any of the requirements of the Act of May 18, 1917, entitled 'An act to authorize the President to increase temporarily the military establishment of the United States,' or of said act as amended, or with regulations promulgated by the President pursuant thereto."

Approved by the President March 8, 1922.

2, 1921 (chapter 40, 42 Stat. 105). This joint resolution declares that the state of war between the United States and the Imperial German Government is at an end. Section 6 provides in part that nothing therein contained shall be—

"effective to terminate the military status of any person now in desertion from the military or naval service of the United States, nor to terminate the liability to prosecution and punishment under the Selective Service Law, approved May 18, 1917, of any person who failed to comply with the provisions of said Act, or of Acts amendatory thereof."

Another joint resolution referred to, no doubt, is that approved March 3, 1921 (chapter 136, 41 Stat. 1359). The provisions of this resolution are too long to quote or even to summarize. In brief, it attempts to declare that provisions relating to the duration or date of termination of the present war, or of the present or existing emergency as contained in all war legislation, shall be construed and treated to be the same as the date of the adoption of this joint resolution. It also contains the same reservation above quoted from the resolution of July 2, 1921. It also reserves from repeal certain other war-time legislation. It expressly repeals the Act of June 15, 1917, known as the Espionage Act, and the act amendatory thereof, approved May 16, 1918, but also expressly revives and restores section 3 of said act with the same force and effect as when originally enacted. It contains this further provision:

"Nothing herein contained shall be held to exempt from prosecution or to relieve from punishment any offense heretofore committed in violation of any act hereby repealed or which may be committed while it remains in force as herein provided."

If any other pertinent acts or joint resolutions of Congress or proclamations of the President exist, I have not been able to find them, nor has my attention been called thereto by counsel. I shall assume that there are none.

If I am correct in my understanding of the joint resolutions above referred to, then section 4 of the Act of June 15, 1917, is repealed and is no longer in force. Certainly nothing contained in that repealed section can have the effect apprehended by Congress in adopting the joint resolution approved March 8, 1922. The provisions, however, above quoted from the joint resolution of March 3, 1921, repealing the Espionage Act, except as to section 3, provide that this repeal shall not exempt any offender from prosecution or relieve him from punishment for any offense previously committed. If this reservation had not been made, the repeal of that law might have prevented the beginning of new prosecutions and brought to an end all pending prosecutions.

Section 2, however, of the Act of May 18, 1917, is still in force; but it contains nothing which looks one way or the other in the direction apparently apprehended by Congress. Nothing in any of these acts or joint resolutions purports to deal with the existing statutes of limitation applicable to prosecutions for offenses against any law of the United States, whether created by the Selective Service Act or the Espionage Act, nor to prosecutions before military tribunals for offenses committed by persons in the military service. All offenses against the

United States, including the offense charged in this indictment, are left to be governed by the statute of limitations provided in section 1708, U. S. Comp. Stat., above noted. The offense of desertion from the military or naval service of the United States is left to be dealt with by the Articles of War and the statutes applicable to the offense of desertion.

[2] The joint resolution approved March 8, 1922, relied on by the government, must be read and construed in the light of this state of the law. It declares negatively that certain acts and joint resolutions of Congress and certain proclamations of the President shall not be construed as having a certain effect. This is the equivalent only of expression by Congress of its opinion as to what such acts, joint resolutions, and proclamations, properly construed, may or do mean. This is not the equivalent of declaring that they are to be given a specific or different meaning. Much less is it the equivalent of an enactment of a law with a retroactive effect.

[3] This joint resolution merely declares that these acts, joint resolutions, and proclamations shall not be construed as effecting or meaning either or both of two things: (1) Terminating the military or naval status of any person who shall, after being drafted or enlisted or commissioned as an officer, have deserted the military or naval service; (2) terminating, before the expiration of three years after the date of the President's proclamation of peace, the amenability to prosecution and trial of any person who shall willfully fail or refuse to comply with any of the requirements of the Act of May 18, 1917. We shall disregard the first, because in this case we are concerned only with the second. Our opinion is entirely in accord with that of the Congress of the United States. It would never have occurred to us to suppose that section 2, Act of May 18, 1917, or section 4, tit. 1, Act of June 15, 1917, or that any of the acts, joint resolutions, or proclamations above referred to, or to which our attention has been called, could be construed as effecting this result.

[4] Obviously, no such meaning or intent could be attributed to any one of them. They do not even relate to that subject-matter. These acts created certain offenses. The Act of May 18, 1917, is not repealed, and hence no question arises as to whether any offender against it has been relieved from prosecution as a consequence of such repeal. On the other hand, the Espionage Act, with the exception of section 3, has been repealed, and such a question might have arisen, except that the repealing act reserves the right of the government to prosecute all offenders for any offenses previously committed. These acts, joint resolutions, and proclamations contain no provision either directly or indirectly subjecting any one to prosecution for a violation of section 5, Act of May 18, 1917, for which the defendant has been indicted, or relieving him from liability to prosecution for an offense previously committed. The offender's liability to prosecution continues, but this is an entirely different question from the assertion that the statute of limitations barring prosecution therefor has been amended or enlarged, or its operation suspended, during any period of time. To determine the latter question we must look to the statutes bearing thereon.

[5] The foregoing considerations repel all inferences sought to be drawn from the joint resolution approved March 8, 1922. If, however, this joint resolution had declared, or could be construed as intending to declare that said section 2 of Act of May 18, 1917, or section 4 (now repealed), tit. 1, Act June 15, 1917, or that any other act or joint resolution of Congress or any presidential proclamation were to be construed as meaning that the three-year statute of limitations had been repealed or its running suspended, then an entirely different question would be presented. It would no doubt then become the court's duty, in the exercise of its judicial function, to examine the law and to determine, after such an examination, the true state and meaning of the law. This would be a judicial and not a legislative question. A Legislature may enact a law, and, if not forbidden by the Constitution, may make it apply ex post facto or retroactively; but the Legislature may declare what the law shall be, but not what it was. In Koshkonong v. Burton, 104 U. S. 668, 26 L. Ed. 886, Mr. Justice Harlan, speaking for the Supreme Court, said:

"When counsel, in Ogden v. Blackledge, 2 Cranch, 272, 277, announced that, to declare what the law is, or has been, is a judicial power, to declare what the law shall be is legislative, and that one of the fundamental principles of all our governments is that the legislative power shall be separate from the judicial, this court interrupted them with the observation that it was unnecessary to argue that point."

In Ogden v. Blackledge, 2 Cranch, 272, 2 L. Ed. 276 an existing statute of limitations was repealed by the act of 1789; later, in 1799, the Legislature passed another act declaring that the act of 1789 shall not be construed as having repealed said statute, but that said statute shall be deemed to have been in full force and effect during the interval; it was held that the second act was then ineffective as a legislative declaration of opinion as to the state of the pre-existing law.

The case of United States v. Stafoff et al., 43 Sup. Ct. 197, 67 L. Ed. ——, decided by U. S. Supreme Court January 2, 1923, is clearly distinguishable. The act of Congress there under consideration was held, and properly, to be a re-enactment, operative only in the future, of certain sections of internal revenue laws which the Supreme Court had previously held to have been repealed by the Prohibition Enforcement Act. The principles of law announced in the two cases just cited were not criticized or condemned, but were, on the other hand, implicitly approved.

This conclusion renders unnecessary and improper an expression of opinion upon the proposition, chiefly argued by counsel, that Congress is without constitutional power, after the existing statute of limitations has barred an offense, to subject the offender to prosecution for an offense thus barred, by a later act extending the period of limitation and making it retroactive. For authorities holding that such an act would be ex post facto, and would deprive one of one's liberty without due process of law, and therefore be in violation of section 9, art. 1, and Amendment 5, Constitution of the United States, see the following: State v. Sneed, 25 Tex. Supp. 66; State v. Keith, 63 N. C. 140; Moore v. State, 43 N. J. Law, 203, 39 Am. Rep. 558. This last case exhausts the arguments upon both sides of the proposition. See

also 16 Corp. Jur. p. 22, § 340; 19 Amer. & Eng. Enc. of Law (2d Ed.) pp. 172, 173, to the same effect. Compare Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648, in which is given by Mr. Justice Chase a definition of an ex post facto law which is said to be contra. Compare Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, in which it is held that an act taking away or extending the bar of the statute of limitations after it has once attached is not unconstitutional as applied to certain kinds of personal actions, but intimating that it would be if applied to divest title to real or personal property which had become vested by the running of the statute.