IN THE SUPREME COURT OF NORTH CAROLINA

No. 130A03-2

Filed 25 September 2020

STATE OF NORTH CAROLINA

v.

QUINTEL MARTINEZ AUGUSTINE

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order dismissing defendant's motion for appropriate relief in which defendant asserted claims under the Racial Justice Act entered on 25 January 2017 by Judge W. Erwin Spainhour in Superior Court, Cumberland County. Heard in the Supreme Court on 26 August 2019.

*Joshua H. Stein, Attorney General, by Danielle Marquis Elder and Jonathan P. Babb, Special Deputy Attorneys General, for the State-appellee.*

*Gretchen M. Engel and James E. Ferguson II for defendant-appellant.*

*Jeremy M. Falcone, Paul F. Khoury, Robert L. Walker, and Madeline J. Cohen for Former State and Federal Prosecutors, amicus curiae.*

*Carlos E. Mahoney, Jin Hee Lee, and W. Kerrel Murray for NAACP Legal Defense and Educational Fund, Inc., amicus curiae.*

*Janet Moore for National Association for Public Defense, amicus curiae.*

*Burton Craige and Bidish Sarma for North Carolina Advocates for Justice, amicus curiae.*

*Grady Jessup for North Carolina Association of Black Lawyers, amicus curiae.*

*Cynthia F. Adcock for North Carolina Council of Churches, amicus curiae.*

*Lisa A. Bakale-Wise and Irving Joyner for North Carolina State Conference of the NAACP, amicus curiae.*

*Professors Robert P. Mosteller & John Charles Boger, amicus curiae.*

*Joseph Blocher for Social Scientists, amicus curiae.*

HUDSON, Justice.

Pursuant to defendant's petition for writ of certiorari, we review whether double jeopardy bars review of the judgment entered in this matter. For the reasons stated in *State v. Robinson (Robinson II),* No. 411A94-6, 2020 WL 4726680 (N.C. Aug. 14, 2020), we hold that it does. We also conclude for the reasons stated in this Court's decision in *State v. Ramseur*, 374 N.C. 658, 843 S.E.2d 106 (2020), that the retroactive application of the 2012 Amended Racial Justice Act (RJA), and the 2013 repeal of the RJA violates the prohibitions against ex post facto laws contained in both (1) the Federal Constitution, and (2) the North Carolina Constitution as interpreted by our prior decision in *State v. Keith*, 63 N.C. 140, 1869 WL 1378 (1869). Accordingly, we vacate the trial court's order and remand for the reinstatement of defendant's sentence of life imprisonment without parole.

Factual and Procedural Background

The jury returned a verdict finding defendant guilty of first-degree murder on 15 October 2002 in the Superior Court, Cumberland County. On 22 October 2002, he was sentenced to death. Defendant then appealed as of right to this Court from the judgment sentencing him to death under N.C.G.S. § 7A-27(a). On direct appeal, we

found no error in defendant's trial and affirmed his conviction and death sentence. *State v. Augustine (Augustine I)*, 359 N.C. 709, 740, 616 S.E.2d 515, 537 (2005).

On 9 August 2010, defendant filed a motion for appropriate relief (MAR) challenging his death sentence under the RJA in the Superior Court, Cumberland County. At the time that defendant filed his MAR, the RJA prohibited any person from being "subject to or given a sentence of death . . . that was sought or obtained on the basis of race." North Carolina Racial Justice Act, S.L. 2009-464, § 1, 2009 N.C. Sess. Laws 1213, 1214 [hereinafter Original RJA] (codified at N.C.G.S. §§ 15A-2010, -2011 (2009)) (repealed 2013). At that time, the RJA allowed defendants to prove that "race was the basis of the decision to seek or impose a death sentence" in their cases if they could present evidence that "race was a significant factor in decisions to seek or impose the sentence of death in the county, the prosecutorial district, the judicial division, or the State at the time the death sentence was sought or imposed." *Id.*, § 1, 2009 N.C. Sess. Laws at 1214. To meet this burden of proof, defendants were allowed to offer statistical evidence. *Id.*

Also in August 2010, Marcus Reymond Robinson filed an MAR pursuant to the RJA in the Superior Court, Cumberland County.[1] Robinson's MAR hearing was held before Judge Gregory A. Weeks from 30 January through 15 February 2012. The trial court received evidence for thirteen days from thirteen witnesses, including: (1)

---

[1] Robinson's appeal is the subject of our decision in *State v. Robinson*, No. 411A94-6, 2020 WL 4726680 (N.C. Aug. 14, 2020).

Barbara O'Brien, an associate professor at Michigan University College of Law who conducted an empirical study of peremptory strike decisions in capital cases in North Carolina and concluded that race was a significant factor in those decisions in North Carolina, the former Second Judicial Division, and Cumberland County at the time of Robinson's trial; (2) George Woodworth, a professor emeritus of statistics and of public health at the University of Iowa who concurred with Professor O'Brien's testimony; (3) Samuel R. Sommers, an associate professor of psychology at Tufts University who concurred with the testimonies of Professor O'Brien and Professor Woodworth; (4) Bryan Stevenson, a professor of law at the New York University School of Law and the director of the Equal Justice Initiative in Montgomery, Alabama, who testified that he found dramatic evidence of racial bias in jury selection in capital cases in North Carolina at the time of Robinson's trial; and (5) the Honorable Louis A. Trosch Jr. a district court judge in Mecklenburg County who was previously a public defender in Cumberland County and has trained judges to recognize implicit bias.

After the MAR hearing, the trial court entered an order on 20 April 2020 granting Robinson's MAR. In the 167-page order, the trial court made extensive findings, including that

> [t]he RJA identifies three different categories of racial
> disparities a defendant may present in order to meet the
> "significant factor" standard, any of which, standing alone,
> is sufficient to establish an RJA violation: evidence that
> death sentences were sought or imposed more frequently

> upon defendants of one race than others; evidence that death sentences were sought or imposed more frequently on behalf of victims of one race than others; or evidence that race was a significant factor in decisions to exercise peremptory strikes during jury selection. N.C.[G.S.] § 15A-2011(b)(1)–(3). It is the third category, evidence of discrimination in jury selection, that was the subject of the nearly three week long evidentiary hearing held in this case.
>
> In the first case to advance to an evidentiary hearing under the RJA, Robinson introduced a wealth of evidence showing the persistent, pervasive, and distorting role of race in jury selection throughout North Carolina. The evidence, largely unrebutted by the State, requires relief in his case and should serve as a clear signal of the need for reform in capital jury selection proceedings in the future.

The trial court concluded that Robinson was entitled to relief under the RJA as follows: "The [c]ourt . . . concludes that Robinson is entitled to have his sentence of death vacated, and Robinson is resentenced to life imprisonment without the possibility of parole."

On 15 May 2012, following the trial court's decision in Robinson's case, defendant Augustine, Christina Shea Walters,[2] and Tilmon Charles Golphin[3] each filed a Motion for Grant of Sentencing Relief arguing that the evidence that established that Robinson was entitled to relief under the RJA also entitled them to relief in their cases. The State responded and requested that the trial court either (1)

---

[2] Walters's appeal is the subject of our opinion in *State v. Walters*, No. 548A00-2 (N.C. Sept. 25, 2020).

[3] Golphin's appeal is the subject of our opinion in *State v. Golphin*, No. 441A98-4 (N.C. Sept. 25, 2020).

deny relief entirely, or (2) order an evidentiary hearing. On 11 June 2012, the trial court scheduled an evidentiary hearing for 23 July 2012.

On 2 July 2012, the General Assembly amended the RJA. An Act to Amend Death Penalty Procedures, S.L. 2012-136, §§ 3–4, 2012 N.C. Sess. Laws 471, 472 [hereinafter Amended RJA]. In the lead-up to defendant's evidentiary hearing, the General Assembly's amendments to the RJA made changes to (1) the burden of proof that defendants were required to meet in order to obtain relief, and (2) the types of evidence that could be used to satisfy that burden of proof. *Id.* Specifically, the Amended RJA allowed relief only if a defendant could demonstrate that "race was a significant factor in decisions to seek or impose the sentence of death in the *county or prosecutorial district* at the time the death sentence was sought or imposed." Amended RJA, § 3, 2012 N.C. Sess. Laws at 472 (emphasis added). This provision of the Amended RJA was narrower than the Original RJA, which also granted relief if a defendant could demonstrate that "race was a significant factor . . . [in] the *judicial division[ ] or the State* at the time the death sentence was sought or imposed.*"* Original RJA, § 1, 2009 N.C. Sess. Laws at 1214 (emphasis added). Further, the Amended RJA defined the relevant time period as "10 years prior to the commission of the offense to the date that is two years after the imposition of the death sentence." Amended RJA, § 3, 2012 N.C. Sess. Laws at 472–73. In addition, while the Original RJA allowed defendants to satisfy their burden of proof through statistical evidence, the Amended RJA stated that "[s]tatistical evidence alone is insufficient to establish

that race was a significant factor." Amended RJA, § 3, 2012 N.C. Sess. Laws at 472.

Finally, the Amended RJA repealed N.C.G.S. § 15A-2011(b)[4] and added N.C.G.S. §

15A-2011(d), which provided that

> [e]vidence relevant to establish a finding that race was a
> significant factor in decisions to seek or impose the
> sentence of death in the county or prosecutorial district at
> the time the death sentence was sought or imposed may
> include statistical evidence derived from the county or
> prosecutorial district where the defendant was sentenced
> to death, or other evidence, that either (i) the race of the
> defendant was a significant factor or (ii) race was a

---

[4] The Original RJA provided that

> [e]vidence relevant to establish a finding that race was a
> significant factor in decisions to seek or impose the sentence of
> death in the county, the prosecutorial district, the judicial
> division, or the State at the time the death sentence was sought
> or imposed may include statistical evidence or other evidence,
> including, but not limited to, sworn testimony of attorneys,
> prosecutors, law enforcement officers, jurors, or other members
> of the criminal justice system or both, that, irrespective of
> statutory factors, one or more of the following applies:
>
> (1) Death sentences were sought or imposed significantly more
> frequently upon persons of one race than upon persons of
> another race.
>
> (2) Death sentences were sought or imposed significantly more
> frequently as punishment for capital offenses against persons of
> one race than as punishment of capital offenses against persons
> of another race.
>
> (3) Race was a significant factor in decisions to exercise
> peremptory challenges during jury selection.

North Carolina Racial Justice Act, S.L. 2009-464, § 1, 2009 N.C. Sess. Laws 1213,
1214.

significant factor in decisions to exercise peremptory challenges during jury selection.

Amended RJA, § 3, 2012 N.C. Sess. Laws at 472. In *Ramseur*, we held that each of these provisions of the Amended RJA constituted impermissible ex post facto laws that could not be applied retroactively. 374 N.C. at 682, 843 S.E.2d at 121.

On 3 July 2012, defendant Augustine, Walters, and Golphin filed amendments to their motions for sentencing relief pursuant to the Amended RJA. On 6 July 2012, the trial court scheduled the evidentiary hearing for 1 October 2012.

The evidentiary hearing on the amended motions was held on 1 October 2012 through 11 October 2012 before Judge Gregory A. Weeks. On 13 December 2012, the trial court entered an order granting the MARs filed by defendant, Walters, and Golphin. In the opening paragraphs of the order, the trial court emphasized that "race was, in fact, a significant factor in the prosecution's use of peremptory strikes during jury selection, and [the trial court] therefore grants Defendants' motions for appropriate relief pursuant to the RJA, vacates their death sentences, and imposes sentences of life imprisonment without possibility of parole" under the Amended RJA. The lengthy order contained numerous findings of fact, including the following:

> 130. Having considered testimony from Coyler, Russ, and Dickson [Cumberland County prosecutors] in conjunction with all of the foregoing evidence, the [c]ourt concludes that their denials that they took race into account in Cumberland County capital cases are unpersuasive and not credible. Their contention that they selected capital juries in a race-neutral fashion does not withstand scrutiny and is severely undercut by all of the

evidence to the contrary. The evidence of Coyler's race-conscious "Jury Strikes" notes in *Augustine*, Coyler and Dickson's conduct in the *Burmeister* and *Wright* cases, Russ' use of a prosecutorial "cheat sheet" to respond to *Batson* objections, and the many case examples of disparate treatment by these three prosecutors, together, constitute powerful, substantive evidence that these Cumberland County prosecutors regularly took race into account in capital jury selection and discriminated against African-American citizens.

131. Finally, this [c]ourt would be remiss were it to fail to acknowledge the difficulties involved in reaching these determinations. Coyler, Russ, and Dickson each represented the State in Cumberland County for over two decades. During that time—as judges testified in this proceeding—these prosecutors gained reputations for good character and integrity. The [c]ourt first notes that its conclusion that unconscious biases likely operated in their strike decisions does not impugn the prosecutors' character. The [c]ourt additionally finds that there is no evidence that any of these prosecutors acted with racial animus towards any minority venire member. To the extent that the actions of these prosecutors were informed by purposeful bias, the [c]ourt finds that such bias falls within the category of "rational bias," and was motivated by the prosecutors' desire to zealously prosecute the defendants, rather than racial animosity.

In the final conclusion of law, the trial court stated that

[i]n view of the foregoing, the [c]ourt finally concludes based upon a preponderance of the evidence that race was a significant factor in decisions to seek or impose Defendants' death sentences at the time those sentences were sought or imposed. Defendants' judgments were sought or obtained on the basis of race.

As a consequence, the trial court concluded by ordering the following:

> The [c]ourt, having determined that Golphin, Walters, and Augustine are entitled to appropriate relief on their RJA jury selection claims, concludes that Defendants are entitled to have their sentences of death vacated, and Golphin, Walters, and Augustine are resentenced to life imprisonment without the possibility of parole.
>
> The [c]ourt reserves ruling on the remaining claims raised in Defendants' RJA motions, including all constitutional claims.

On the same day, the trial court entered a separate Judgment and Commitment, sentencing defendant to life imprisonment without the possibility of parole. The State neither appealed nor otherwise sought review of the separate Judgment. However, the State sought review by this Court of the trial court's decisions granting relief to defendant, Robinson, Walters, and Golphin pursuant to two separate petitions for writ of certiorari. We allowed both petitions.

On 18 December 2015, we issued separate orders addressing the review of the petitions for certiorari. In Robinson's case, this Court vacated the trial court's order granting relief under the RJA and remanded his case to the trial court. *State v. Robinson (Robinson I)*, 368 N.C. 596, 597, 780 S.E.2d 151, 152 (2015). This Court concluded that the trial court erred in granting relief because it abused its discretion by denying the State's third motion to continue the evidentiary hearing on Robinson's MAR. *Id.* at 596, 780 S.E.2d at 151. In a separate order, we vacated the trial court's order granting relief to Augustine, Walters, and Golphin, and remanded the three

cases to the trial court as well. *State v. Augustine (Augustine II)*, 368 N.C. 594, 780

S.E.2d 552 (2015). The remand order entered by this Court stated the following:

> After careful review, we conclude that the error recognized in this Court's Order in *State v. Robinson*, [368 N.C. 596, 780 S.E.2d 151 (2015)], infected the trial court's decision, including its use of issue preclusion, in these cases. Accordingly, the trial court's order is vacated. Furthermore, the trial court erred when it joined these three cases for an evidentiary hearing. These cases are therefore remanded to the senior resident superior court judge of Cumberland County for reconsideration of respondents' motions for appropriate relief. *Cf.* Gen. R. Pract. Super. & Dist. Cts. 25(4), 2016 Ann. R. N.C. 22.
>
> We express no opinion on the merits of respondents' motions for appropriate relief at this juncture. On remand, the trial court should address petitioner's constitutional and statutory challenges pertaining to the Act. In any new hearings on the merits, the trial court may, in the interest of justice, consider additional statistical studies presented by the parties. The trial court may also, in its discretion, appoint an expert under N.C. R. Evid. 706 to conduct a quantitative and qualitative study, unless such a study has already been commissioned pursuant to this Court's Order in *Robinson*, in which case the trial court may consider that study. If the trial court appoints an expert under Rule 706, the Court hereby orders the Administrative Office of the Courts to make funds available for that purpose.

*Augustine II*, 368 N.C. at 594, 780 S.E.2d at 552–53.

In June 2013—during the pendency of the State's appeals to this Court in

*Robinson I* and *Augustine II*—the General Assembly repealed the RJA.[5] This repeal

came after we allowed the State's petition for writ of certiorari in *Robinson I* on

---

[5] Act of June 13, 2013, S.L. 2013-154, § 5.(a), 2013 N.C. Sess. Laws. 368, 372.

11 April 2013, but before we allowed the State's petition for writ of certiorari in *Augustine II* on 3 October 2013. The repeal applied retroactively to any MAR filed before the repeal's effective date. Act of June 13, 2013, S.L. 2013-154, § 5.(d), 2013 N.C. Sess. Laws 368, 372. However, the repeal's savings clause exempted from the repeal all cases in which there was

> a court order resentencing a petitioner to life imprisonment without parole pursuant to the provisions of Article 101 of Chapter 15A of the General Statutes prior to the effective date of this act *if the order is affirmed upon appellate review and becomes a final Order* issued by a court of competent jurisdiction.

*Id.* (emphasis added). Conversely, the savings clause specifically made the repeal's retroactivity provision

> applicable in any case where a court resentenced a petitioner to life imprisonment without parole pursuant to the provisions of Article 101 of Chapter 15A of the General Statutes prior to the effective date of this act, *and the Order is vacated upon appellate review* by a court of competent jurisdiction.

*Id.* (emphasis added).

On remand from our orders in *Robinson I* and *Augustine II*, the trial court held a single hearing for the four defendants' cases; the hearing was not scheduled as an evidentiary hearing, and no evidence was taken. Prior to the hearing, all counsel were notified that the trial court had ordered that the hearing would only involve arguments on the following single question of law:

> Did the enactment into law of Senate Bill 306, Session Law

2013-14, on 19 June 2013, specifically Sections 5. (a), (b) and (d) therein, render void the Motions for Appropriate Relief filed by the defendants Augustine, Walter[s], Golphin and Robinson pursuant to the provisions of Article 101 of the General Statutes of North Carolina?

After the hearing, the trial court dismissed the MARs filed by all defendants concluding that they were voided by the repeal of the RJA. Defendant Augustine filed a petition for writ of certiorari requesting review of the trial court's ruling on 30 May 2017. We allowed the petition on 1 March 2018.

Analysis

For the reasons stated in this Court's decision in *Robinson II*, "the retroactivity provision of the RJA Repeal violates the double jeopardy protections of the North Carolina Constitution." 2020 WL 4726680, at *12. Furthermore, the judgment entered by the trial court sentencing defendant Augustine to life imprisonment without the possibility of parole was and is a final judgment. Therefore, double jeopardy bars further review. *Id.* In addition, for the reasons stated in *Ramseur*, we conclude that the retroactive application of the RJA repeal violates the prohibitions against ex post facto laws contained in both (1) the United States Constitution, and (2) the North Carolina Constitution as interpreted by our prior opinion in *Keith*, 63 N.C. 140, 1869 WL 1378. *Ramseur*, 374 N.C. at 658–83, 843 S.E.2d at 106–22. Accordingly, we vacate the trial court's order ruling that the repeal of the RJA voided defendant's MAR and remand to the Superior Court, Cumberland County, for the reinstatement of defendant's sentence of life imprisonment without parole.

VACATED AND REMANDED.

Justice ERVIN did not participate in the consideration or decision of this case.

Justice DAVIS concurring in result.

For the reasons stated in Justice Ervin's concurring opinions in *State v. Golphin*, No. 441A98-4 (N.C. Sept. 25, 2020), and *State v. Walters*, No. 548A00-2 (N.C. Sept. 25, 2020), I concur in the result only.

Justice NEWBY dissenting.

For the reasons stated in my dissenting opinions in *State v. Robinson*, No. 411A94-6, 2020 WL 4726680 (N.C. Aug. 14, 2020), and *State v. Ramseur*, 374 N.C. 658, 843 S.E.2d 106 (2020), I respectfully dissent.