## FABER *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 134. Submitted April 20, 1911.—Decided May 29, 1911.

*Quære* and purposely not decided whether the reduction in tariff rates provided by § 2 of the treaty with Cuba of 1903 is limited to rates of duty in general tariff acts and does not apply to special rates under special agreements with other countries. *Whitney* v. *Robertson*, 124 U. S. 190.

The treaty with Cuba of 1903 was signed and proclaimed after the

decisions of this court in the *Insular Cases* to the effect that Porto Rico and the Philippine Islands were not foreign countries; and within the meaning ·of that treaty the Philippines are not a foreign country or another country, and the reduction of tariff on articles imported from Cuba are not to be based on tariff rates on the same articles brought from the Philippine Islands.

In the absence of some qualifying phrase the word "country" in the revenue laws of the United States embrace all provinces of a state no matter how widely separated and the Philippines are a part of the United States within the meaning of the treaty with Cuba of 1903.

The duties imposed and collected on articles coming into the United States from the Philippine Islands are not covered into the treasury of the United States but are used and expended solely for the use and government of those Islands and are not to be regarded as duties on imports from foreign countries within the meaning of the treaty with Cuba of 1903.

The word "imports" is the correlative of the word "exports" and preferential rates granted to Cuba under the treaty of 1903 relate only to duties on imports from countries foreign to the United States.

The provisions of Art. VIII of the treaty with Cuba of 1903 will not be construed so as to give that country advantages over shipments coming into the United States from a part of its own territory.

157 Fed. Rep. 140, affirmed on the above points.

THIS case raises the question as to whether Cuban imports are entitled to a reduction of twenty per cent upon the rates charged on goods coming from the Philippine Islands, or only twenty per cent upon the regular tariff rates on goods imported from foreign countries.

The Tariff Act of July 24, 1897, lays a duty on cigars of $4.50 per pound and twenty-five per cent ad valorem.

The act of March 8, 1902, § 2, c. 140, 32 Stat., 54, to raise revenue for the Philippine Islands, provides that there shall be "levied, collected and paid upon all articles coming into the United States from the Philippine Archipelago the rates of duty which are required to be collected and paid upon like articles imported from foreign countries: Provided "that upon all articles the growth and

product of the Philippine Archipelago *coming into the United States from the Philippine Archipelago there shall be levied, collected and paid only seventy-five per centum of the rates of duty aforesaid.* . . . All duties and taxes collected in the United States upon articles coming from the Philippine Archipelago · . . . shall not be covered into the general fund of the Treasury of the United States, but shall be held as a separate fund and paid into the Treasury of the Philippine Islands to be used and expended for the government and benefit of said islands." (32 Stat. 54; 5 Fed. Stat. Ann. 716.)

The Commercial Convention with Cuba, proclaimed December 17, 1903 (33 Stat. 2136), declares, in Article 2, "that during the term of this convention all merchandise . . . being the product of the soil or industry of the Republic of Cuba imported into the United States shall be admitted at a reduction of twenty per centum of the rates of duty thereon, as provided by the tariff act of the United States, approved July 24, 1897, or as may be provided by any tariff law of the United States subsequently enacted."

Article 8, p. 2140, 33 Stat. provides that *"the rates of duty herein granted by the United States to the Republic of Cuba are and shall continue during the term of this convention preferential in respect to all like imports from other countries,* and, in return for said preferential rates of duty granted to the Republic of Cuba by the United States, it is agreed that the concession herein granted on the part of the said Republic of Cuba to the products of the United States shall likewise be, and shall continue, during the term of this convention, preferential in respect to all like imports from other countries."

In April, 1906, the convention and statutes above referred to being of force, the plaintiffs imported cigars and alcohol into the United States from Cuba. He contended that under the convention he could only be required to

pay a duty twenty per cent less than that collected on tobacco coming into the United States from Philippine Islands which paid seventy-five per cent of the regular rate under the Tariff Act of July, 1897. He also claimed that he should not be required to pay twenty per cent less than the regular tariff on alcohol, but twenty per cent less than special rates allowed on importations of alcohol from France, Germany, Italy and Portugal.

His claim being disallowed he paid, under protest, a duty of twenty per cent less than the tariff rate on cigars and alcohol. On a hearing by the Board of Appraisers his protest was overruled. That judgment was affirmed by the Circuit Court (157 Fed. Rep. 140) and the case was brought here.

*Mr. Edward S. Hatch* and *Mr. Walter F. Welch* for appellants:

A treaty is governed by the same rules of law as other contracts. *Foster* v. *Neilson*, 2 Pet. 253, 314; *Fourteen Diamond Rings* v. *United States*, 183 U. S. 176, 182; *Head Money Cases*, 112 U. S. 580.

In construing the language of treaties the courts will adopt the same general rules which are applicable in the construction of statutes, contracts and written instruments generally, in order to carry out the purpose and intention of the makers. *Tucker* v. *Alexandroff*, 183 U. S. 424; *The Amiable Isabella*, 6 Wheat. 1, 71; *United States* v. *Percheman*, 7 Pet. 51.

The court is bound to give effect to the stipulations of the treaty in the manner and to the extent which the parties have declared, and not otherwise. *The Amiable Isabella*, 6 Wheat. 1, 71.

Where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and one liberal, the latter construction is to be preferred and the interpretation which is favorable to the inferior

party should be adopted. *Worcester* v. *Georgia*, 6 Pet. 582; *Tucker* v. *Alexandroff*, 183 U. S. 424; *Shanks* v. *Dupont*, 3 Pet. 242; *Hauenstein* v. *Lynham*, 100 U. S. 483; *Geofroy* v. *Riggs*, 133 U. S. 258, 272; Vattel's Law of Nations, bk. 2, c. 17.

The American favored nation doctrine is not applicable to this case. *Bartram* v. *Robertson*, 122 U. S. 116; *Whitney* v. *Robertson*, 124 U. S. 190.

The promise of the United States for a good and valuable consideration, enacted by the Congress, becomes a rule of law enforceable by the courts. Art. VI, Par. 2, Const. U. S.; Art. III, § 2, Const.

Courts are bound to give effect to treaties in precisely the same manner that they do to the provisions of the Constitution or the laws of Congress. There is no distinction. They are equally the supreme law of the land. *United States* v. *The Peggy*, 1 Cranch, 103; *Strother* v. *Lucas*, 12 Pet. 410, 439; *Foster* v. *Neilson*, 2 Pet. 253, 314; *Nicholas* v. *United States*, 122 Fed. Rep. 892; *Boudinot* v. *United States*, 11 Wall. 616; *Whitney* v. *Robertson*, 124 U. S. 190; *Taylor* v. *Morton*, 2 Curtis, 454, 459.

Alcohol from Cuba is entitled to a twenty per centum preference over like merchandise from France, Germany and other foreign countries. Section 1, Par. 289, Tariff Act of July 24, 1897.

The Philippines are within the phrase "other countries" as used in Art. VIII of the Cuban Treaty. In the treaty and the act of Congress a careful distinction is made between "other countries" and "foreign countries." *Fourteen Diamond Rings* v. *United States*, 183 U. S. 176; *Downs* v. *Bidwell*, 182 U. S. 244.

Algeria was an African country different from and other than France, *United States* v. *Tartar Chemical Co.*, 127 Fed. Rep. 944; T. D. 29149.

For tariff purposes the United States regarded Great Britain as one country and India as another. T. D.

27507, G. A. 6405, see also Sen. Doc. 185, 60th Cong., 1st Sess.; T. D. 27840; T. D. 27583; *Queen* v. *Commissioners of Stamps,* 18 L. J. Q. B. 201; *Campbell* v. *Hall,* 1 Cowper, 204, 211; *Otway* v. *Ramsay,* King's Bench, 1736; Sir H. Jenkins, "British Rule and Jurisdiction Beyond the Seas," 41. As to Channel Islands see Cooley's Blackstone, Vol. 1, 4th ed.; *United States* v. *The Nancy and the Caroline,* 3 Wash. C. C. 281; Daily Consular and Trade Reports, Nov. 27, 1906, No. 2729; same for Dec. 28, 1907.

By international usage, which must govern in the construction of a treaty between two nations, the Philippines must be regarded as falling within the phrase "other countries" in a commercial convention having to do with tariff rates between Cuba and the United States. T. D. 24051; T. D. 28401; Int. Rev. Circ. No. 581; *Rassmussen* v. *United States,* 197 U. S. 516; *Dorr* v. *United States,* 195 U. S. 138. Canada, India, Australia, or New Zealand, each having its own customs and revenue system, would be regarded for the purposes of a commercial convention as "other countries," as to Great Britain, although they were possessions of that country.

If the present movement for the consummation of a reciprocity treaty with Canada succeeds it ought to be made known by this court whether Cuba can be discriminated against and deprived of the benefit of her agreement with the United States, and whether numerous articles can be admitted free of duty from Canada by agreement without according to Cuba the same rights under the treaty now in existence. If Cuba can be discriminated against in any of these ways the promise of the United States in the Cuban treaty cannot mean anything to the effect that Cuban products shall have a preference over all like imports from other countries. If the United States for any reason is not willing to carry out its agreement with Cuba then there is

ample provision therein for denouncing the same, and until that time it should be carried out according to its terms.

*Mr. D. Frank Lloyd,* Assistant Attorney General, and *Mr. Charles E. McNabb,* for the United States:

The Philippine Islands are neither a "foreign country" nor an "other country," within the meaning of the Cuban convention.

For definitions of "foreign country" see *The Ship Adventure,* 1 Brock. 235, 241; Fed. Cas. 202, 204; *The Boat Eliza,* 2 Gall. 4; 8 Fed. Cas. 455, 456; *Taber* v. *United States,* 1 Story, 1; 23 Fed. Cas. 611, 613, 614.

Upon ratification of the treaty of peace with Spain the Philippines and other islands therein ceded to the United States ceased to be foreign and became territory of the United States subject to such tariff legislation as Congress might deem proper. *Insular Cases* in Vol. 182 U. S. Reports; *Fourteen Diamond Rings* v. *United States,* 183 U. S. 176, 178, 179, 181, 182; *United States* v. *Heinszen,* 206 U. S. 370, 379, 380.

The words "foreign country" appear only in § 28 of the Customs Administrative Act of June 10, 1890. The word "country" without the adjective "foreign" appears in §§ 2, 3, 4, 5, 7, 10 and 19. There can be no doubt whatever that foreign country is invariably meant by the word "country," because the Customs Administrative Act relates only to merchandise imported from foreign countries. See *United States* v. *The Recorder,* 1 Blatchf. 218; 27 Fed. Cas. 718, 720, 721; *Stairs* v. *Peaslee,* 18 How. 521, 526.

The term "country" as used in the law is to be regarded as embracing all the possessions of a nation, however widely separated, which are subject to the same supreme executive and legislative authority and control. (Cust. Reg. 1857, art. 300; Cust. Reg. 1874, art. 432;

Cust. Reg. 1884, art. 499; Cust. Reg. 1892, art. 835; Cust. Reg. 1899, art. 1254; Cust. Reg. 1908, art. 873.)

The legal effect of contemporaneous and long-continued construction and practice of the executive department charged with the administration of the law has been repeatedly declared by the courts. *United States* v. *The Recorder*, and *Stairs* v. *Peaslee, supra*, are in point. For recent decisions of this court, sustaining such construction and practice, see: *United States* v. *Falk*, 204 U. S. 143, 152; *United States* v. *Cerecedo*, 209 U. S. 337, 339; *Komada* v. *United States*, 215 U. S. 392, 396.

The words "other countries" appearing in Art. VIII of the Cuban convention, *supra*, are inapplicable to the Philippine Islands, as is shown by the context and the purpose.

Article VIII declares that the concession made in said convention shall be "preferential in respect to all like imports from other countries." The words "imports from other countries" do not refer to goods coming into the United States from the Philippine Islands. "Import," "imports," "imported," and "importation" are used in the customs laws to refer only to merchandise brought into the United States from a foreign country the same as the correlative terms "export," "exports," "exported," and "exportation" are applied to merchandise carried out of the United States to a foreign country. *Woodruff* v. *Parham*, 8 Wall. 123, 131 *et seq.*; *Brown* v. *Houston*, 114 U. S. 622, 628 *et seq.*; *Fairbank* v. *United States*, 181 U. S. 283, 294; *De Lima* v. *Bidwell*, 182 U. S. 1, 176; *Dooley* v. *United States*, 183 U. S. 151, 154, 155.

A thing may be within the letter of the statute and yet not within the statute because not within its spirit nor within the intention of its makers. *Holy Trinity Church* v. *United States*, 143 U. S. 457, 463; *Jones* v. *Guaranty &c. Co.*, 101 U. S. 622, 626; *Smythe* v. *Fiske*, 23 Wall. 374, 380; *United States* v. *Babbit*, 1 Black, 55, 61; *Raymond* v.

*Thomas,* 91 U. S. 712, 715; *Indianapolis &c. R. Co.* v. *Horst,* 93 U. S. 291, 300; *Hawaii* v. *Mankichi,* 190 U. S. 197, 212.

The law governing tariff relations with the Philippine Islands is for the benefit of the inhabitants thereof and not to provide revenue for the Government of the United States.

The far-reaching effect of the construction contended for by appellants would accomplish results entirely inconsistent with the purpose of Congress, to wit, cigars and other articles would be imported from Cuba in effective competition with, and perhaps to the exclusion of, similar products of the Philippine Islands, and articles on the free list which do not come into the United States from those islands would be imported from Cuba to the detriment of American industries.

Article VIII of the Cuban convention provides that the rates of duty granted to Cuba shall be "preferential in respect to all like imports from other countries," and then provides that in return therefor the concession to products of the United States shall likewise be "preferential in respect to all like imports from other countries."

The words "other countries" must mean the same thing in both clauses, and it is obvious that the latter clause cannot include the Philippine Islands because the word "preferential" is predicated upon and pre-supposes a treaty or convention with another country prejudicial to the United States. Cuba could not enter into such a treaty or convention with the Philippine Islands as a country.

Mr. Justice Lamar, after making the foregoing statement, delivered the opinion of the court.

Article 2 of the Convention with Cuba provides that the products of that island shall be admitted into the

United States at a reduction of twenty per cent of the rates of duty in the Tariff of 1897, or tariff laws subsequently enacted. There is much force in the suggestion that the reduction is limited to the rates of duty in general tariff acts, and does not apply to special rates under special agreements with other countries. *Whitney* v. *Robertson*, 124 U. S. 190. This point, however, we purposely leave open and limit our consideration to the principal question discussed in the brief, whether the Philippine Islands are "another country" within the meaning of the eighth article of the Cuban Treaty, providing that the rates therein granted shall continue "preferential in respect to all like imports from other countries."

This treaty was signed and proclaimed several years after it had been decided, in the *Insular Cases*, that Porto Rico and the Philippine Islands were not foreign countries, but territory of the United States, subject to such laws as Congress might enact for their political and fiscal management. In 1901 this court, in *Fourteen Diamond Rings* v. *The United States*, 183 U. S. 176, 178, said that "the theory that a country remains foreign with respect to the tariff laws, until Congress has acted by embracing it within the Customs Union, presupposes that the country may be domestic for one purpose and foreign for another." That case and *DeLima* v. *Bidwell*, 182 U. S. 1; *United States* v. *Heinszen*, 206 U. S. 370; *Dooley* v. *United States*, 183 U. S. 151, show that, notwithstanding their geographical remoteness, the Philippines are not a foreign country, and, if so, not "another country" within the meaning of the Cuban Treaty.

There have been statutes in which the language indicated an intent to make a distinction between a country and its colonies. But in the absence of some qualifying phrase "the word country in the revenue laws of the United States has always been construed to embrace all

the possessions of a foreign State, however widely separated, which are subject to the same supreme executive and legislative control." *Stairs* v. *Peaslee,* 18 How. 521, 526. If, therefore, in our revenue laws, a colony is treated as a part of the country to which it belongs, the Philippine Islands must be treated as a part of this Nation and not as another country. It must be presumed that the words "other country" in the Cuban Treaty were used according to their known and established interpretation, *Ibid,* and did not refer to charges on shipments from territory belonging to the United States. That they were not so regarded appears from the language of the act of March 8, 1902, 32 Stat., c. 140, which studiously avoids using the words "imports," and enacts that upon articles *"coming into* the United States from the Philippine Archipelago," there shall be levied only seventy-five per cent of the rates of duty imposed on like articles imported from foreign countries. These duties, when collected, are not covered into the Treasury of the United States, but are to be used and expended solely for the use and government of the Philippine Islands.

But it is argued that even if the United States understood the Philippine Islands to be a part of this country, Cuba could not be expected to understand that the words "other countries" did not include the Philippines if a duty was in fact charged on goods coming from those islands.

But the eighth article refers to "imports"—the correlative of "exports." This necessarily related to shipments from a country which was foreign to the United States. *Pittsburgh Coal Co.* v. *Louisiana,* 156 U. S. 590, 600; *Patapsco Co.* v. *North Carolina,* 171 U. S. 345, 353. The provision that the rates granted to Cuba shall continue "preferential in respect to all like imports from other countries," does not relate to charges on shipments between places under the same flag, but to duties laid on ship-

ments—on imports—from countries which are foreign
to the United States. Both in the light of our own legis-
lation and in view of the generally accepted interpretation
of the word "imports," the eighth article of the treaty can-
not be construed to have been intended to give to Cuba
an advantage over shipments of merchandise coming into
the United States from a part of its own territory, where
the collections were in part made as a means for raising
revenue for the support of the government of the Philip-
pine Islands. Cuba was given a preferential of twenty
per cent over tariff rates on imports from countries which
are foreign to the United States. ·

We make no ruling as to the duty to be charged on
alcohol, because in the brief of the Government it is said
that without conceding plaintiff's contention to be sound,
and for reasons unnecessary to state, it consents to a re-
versal of so much of the judgment as relates to alcohol.
It will be so ordered. The judgment of the Circuit Court
as to the rate of duty on the cigars is

*Affirmed.*