### Petition of SCHNEIDER.

### Petition of PENALOSA.

District Court, S. D. New York.    March 23, 1927.

**1. Aliens ⬅62(3)—Absence of applicant for citizenship in native country for 15 months during mother's illness and death held not "break in continuous residence."**

Absence from United States for 15 months of applicant for citizenship, because of illness and death of his mother while he was visiting her in his native country, during which time alien retained apartment in United States, with intention of returning, *held* not to constitute break of continuous residence sufficient to defeat application for citizenship.

**2. Aliens ⬅62(3)—Situs of home is not test of residence sufficient for admission to citizenship.**

Situs of home of a person, while test of domicile, is not the test of residence required of applicant for admission as citizen of United States.

**3. Aliens ⬅62(3)—Stay in foreign countries for business purposes for period of years held "break in continuous residence" required for citizenship.**

Stay of applicant for citizenship in foreign countries for two and three year periods at dif-

ferent times for business purposes *held* to constitute break in continuous residence required for admission to citizenship, though applicant at all times maintained apartment within United States, which was apparently his home.

Naturalization. Separate petitions by Hans Sandor Schneider and Emanuel Lewis Penalosa for admission to citizenship of the United States. Application of Schneider granted, and that of Penalosa denied.

AUGUSTUS N. HAND, District Judge. The petitioner, Hans Sandor Schneider, first came to the United States on August 10, 1914, and continued to reside therein until April 28, 1922, when he left the United States for his native country, Austria, and remained outside the limits of the United States until June 21, 1924. It is admitted that he went to Austria for the purpose of visiting his mother, and that at the time of leaving the United States it was his intention to return within a short time, but that his absence was prolonged because of his mother's continued illness, until her death in May, 1924. Immediately after the death of his mother he arranged to return to the United States, and returned June 21, 1924. During his absence he consulted the American consul, for the purpose of having his absence from the United States recorded by the American consulate, in order to protect his claim of continued residence in the United States, but was informed by the consul that there was no method by which such action could be taken. Before he left the United States he was employed by the Waldorf Astoria as maître d'hotel, and on his return resumed his position there. He did not follow any occupation or conduct any business during his absence in Austria, and it was his intention to return to the United States and to continue to reside there permanently. He maintained an apartment in the city of New York during his absence, and left his furniture and personal effects in this country.

[1] While it appears from the above that the applicant was away from the United States over two years, it seems clear that he did not establish any other residence during his absence, but he was in Austria merely because of the illness and subsequent death of his mother, and at all times retained his apartment here with an intention of returning. Under the decision of Neuberger v. United States (C. C. A.) 13 F.(2d) 541, it is my opinion that there was no break in the continuous residence of the applicant. The only objection to his admission to citizenship is because of the contention that he did not maintain a continuous residence. That contention is overruled, and the applicant is granted admission.

The petitioner Emanuel Lewis Penalosa arrived in the United States in 1908, and remained continuously therein until January, 1914, when he entered the employ of the West India Oil Company, a subsidiary of the Standard Oil Company of New Jersey, and remained in the employ of that company until June, 1917. In connection with such employment, he was sent to the British West Indies as representative and assistant manager, and was absent from the United States from April, 1914, until May, 1917, when his employment with the West India Oil Company terminated.

In June, 1917, Penalosa entered the employ of the National City Bank in New York, and was sent by it to Venezuela to organize a branch, where he remained in connection with his work for the bank until November, 1918. Just prior to taking the trip to Venezuela he married an American citizen in New York City, who accompanied him on the trip. Following his return to New York in November, 1918, he remained here with the National City Bank until March, 1919. The bank again sent him to Venezuela to take charge of the branch bank there, where he remained until April, 1920, when he returned to the United States under orders of the bank. During his period of absence from March, 1919, to April, 1920, his wife remained at his home in New York continuously, and during such absence a child was born to her. In January, 1921, the bank again sent him to Venezuela to manage their branch bank, where he remained until March 15, 1923, when he again returned to New York. His wife was with him during this last stay in Venezuela, and a second child was born there. When the petitioner returned to New York, in March, 1923, his wife and two children returned with him, and he remained in New York in the employ of the bank until the fall of 1923, when he terminated his employment with it and arranged with a number of American firms to represent them in efforts they were making to expand their business in Venezuela. He left for Venezuela January 2, 1924, and returned November 26, 1924; his wife and children remaining at his home in New York City. Following his return in November, 1924, he

continued to retain an inactive interest in the representation of the several firms and corporations for which he had gone to Venezuela on his last trip and still retains such connection with some of them. In January, 1926, petitioner entered the employ of the Tidewater Oil Company; on February 13, 1926, he went, for his employers, to the Argentine Republic, with the understanding that his business would be for a brief period, and he therefore took his children with him. He returned, with his wife and children, to the United States on June 2, 1926, and has not been absent therefrom since.

In the year 1917, petitioner opened a bank account with the Fidelity Trust Company, in New York City, and still retains his account there. Upon the death of petitioner's father, in 1919, in Trinidad, he arranged to have his sister come to the United States. She arrived here that year, and has resided continuously in New York City ever since. At all times since his sister's arrival, he has maintained an apartment for his wife, his children, and his sister, even during the period of his absence from the United States. Following his marriage, and prior to 1919, petitioner accumulated household and personal effects to the approximate value of $5,000, and all of them remained at his home in New York City at all times, even though he was absent therefrom, except such articles as were necessary to be taken by him in connection with his trips abroad.

[2, 3] It is contended that the application of Penalosa also comes within the Neuberger decision, supra. He has for years maintained an apartment in New York, which was apparently his home. New York was the origin of the business activities which he represented when abroad. But the situs of the home of a person, while the test of domicile, is not the test of residence. Penalosa was the manager of the branch of the National City Bank in Venezuela from January, 1921, to March, 1923. There was his settled abode with his family for over two years; there he conducted his only business. He cannot be said to have been in Venezuela on a mere trip, but he lived there as chief local representative of the bank. If there is a distinction between domicile and residence as used in the Naturalization Act, the long stay of Penalosa while managing the bank's business in Venezuela comes within the meaning of the latter term.

While there is practical difficulty in applying the distinction recognized in Neuberger v. United States, supra, and in reconciling possible implications of that decision with United States v. Mulvey (C. C. A.) 232 F. 513, I think the case of Schneider is different from that of Penalosa. Schneider started out on a short visit to Austria. His visit was only prolonged by his mother's illness and death. He engaged in no occupation while there, and may be said in some sense to have been there only from day to day, ready at any time to return to his apartment in New York when the family situation warranted. In the Mulvey Case, supra, the applicant seems to have stayed abroad over two years merely to please his mother. While ultimate return to New York was intended in all these cases, in the Schneider Case there is evidence that the proposed absence was for a short time, and there was the human compulsion of the illness and death of his mother that seems to justify a distinction between Schneider and Mulvey. Penalosa's stay, on the other hand, was not only deliberate, but was doubtless intended to be for an extended period, while he was engaged in directing the affairs of the bank in Venezuela.

The application of Schneider for admission is granted, and that of Penalosa is denied.