**24**

## In re SCHRADIECK.

Circuit Court of Appeals, Second Circuit.
November 12, 1928.

No. 22.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Lewis Landes, of New York City (Moses Katcher, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The appellee was born in Germany on September 5, 1889. He came to the United States on October 1, 1894, with his parents, and made his residence in Brooklyn, where he attended school, preparatory school, and later, in 1912, graduated from Colgate University, at Hamilton, N. Y. Then 23 years of age, he accepted employment with the Standard Oil Company of New York, and 4 months later he was transferred to their branch in Manila, Philippine Islands. His widowed mother and sister remained in Brooklyn, where he maintained them, and where he kept a bank account. During the 5 years prior to his admission as a citizen, he remained in the Philippine Islands 4 years and 3 months, and at intervals, making up a total of 9 months, he was in the United States. His application declared an intention of becoming a citizen on June 20, 1924. He stated that he resided continuously in the United States for 5 years immediately preceding the date of his petition, which was filed December 3, 1926. He was admitted to citizenship over the objection of the Naturalization Examiner.

The petition of an applicant for citizenship requires him to declare on oath that it is his bona fide intention to become a citizen of the United States, renounce allegiance to other foreign countries, and requires the verification by two credible witnesses, who are citizens of the United States, that they personally have known the applicant to be a resident of the United States for a period of five years continuously, and of the state or territory in which the application is made for a period of at least one year, immediately preceding the date of filing his petition. Each shall have personal knowledge that the petitioner is a person of good moral character and qualified to be admitted as a citizen. Before admission, it must appear to the satisfaction of the court that the alien has resided within the United States for at least five years continuously and one year within the state. Act June 29, 1906, § 4, subd. 2, 34 Stat. 596; 8 USCA § 382.

The time the appellee spent at Manila in the Philippine Islands was not a mere temporary residence. Nor was he there temporarily on business. He had a protracted residence, and this time may not count as a residence "continuously within the United States," under the statute. United States v. Mulvey (C. C. A.) 232 F. 513; United States v. Cantini (C. C. A.) 212 F. 925; Matter of Schneider (Matter of Penalosa) (D. C.) 19 F.(2d) 404. Neuberger v. United States (C. C. A.) 13 F.(2d) 541, is to be distinguished, for the reason that Neuberger's absence was but temporary, and his protracted stay was due to war conditions, over which

he had no control, and which forbade his return. See United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853; United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321. There is no right to naturalization, unless the statutory requirements are complied with, and, if the prescribed qualifications do not exist, the certificate was illegally procured and may be challenged by the government. U. S. ex rel. De Rienzo v. Rodgers (C. C. A.) 185 F. 334. Whether the words of the statute providing for "five years' residence continuously" have been complied with is a question of fact, which must be determined by the circumstances surrounding each case. Where voluntary employment is accepted without the United States, and a residence is maintained there for all but nine months of the five years, it cannot be seriously argued that the statute as to residence has been complied with.

But it is argued that the residence of the appellee in the Philippine Islands can be counted as residence within the United States. The Philippine Islands went under the sovereignty of the United States by a treaty with Spain after the Spanish-American War. They have not been incorporated into the United States as a part thereof. They are subject to control by the United States as a dependency or possession, and as such constitute territory of the United States, and, having been so acquired, they are subject to such control, until Congress in its discretion determines that the dependency shall cease, or until the Philippine Islands shall be admitted as part of the United States. This power of Congress over the Islands is general and plenary, and includes the right to make all rules and regulations respecting the islands and their government. Legislation from time to time has established a form of government for the Philippine Islands. The ratification of the same treaty with Spain has been held to determine the status of Porto Rico as not a foreign country, within the meaning of tariff laws. De Lima v. Bidwell, 182 U. S. 1, 21 S. Ct. 743, 45 L. Ed. 1041; In re Fourteen Diamond Rings, 183 U. S. 176, 22 S. Ct. 59, 46 L. Ed. 138; Dooley v. United States, 182 U. S. 222, 21 S. Ct. 762, 45 L. Ed. 1074. So it has been held that the Philippine Islands, after the ratification of the treaty, ceased to be a foreign country, within the meaning of the tariff laws. Alex E. Faber v. United States, 221 U. S. 649, 31 S. Ct. 659, 55 L. Ed. 897.

It is provided by title 48 of the U. S. Code (48 USCA), relating to territories and insular possessions (sections 1001–1003), that the statutory laws of the United States enacted subsequent to August 29, 1916, shall not apply to the Philippine Islands, except when they specifically so provide. Section 1013 relates to the administration of immigration laws, and provides that the immigration laws of the United States in force in the Philippine Islands shall be administered by the officers of the general government thereof, designated by the appropriate legislation of that government, and the moneys collected under said law, as duty or head tax on alien immigrants entering into the islands, shall not be placed in the general fund of the treasury of the United States, but shall be paid to the treasury of the islands, to be used and expended for the government and benefit of the islands. The chapter of the same title dealing with Porto Rico is chapter 4, title 48, U. S. Code (48 USCA §§ 731–893). Act March 2, 1917, c. 145 (39 Stat. 953; title 8, c. 1, § 5, of the U. S. Code; 8 USCA § 5), known as the act providing for the civil government of Porto Rico, reads:

"Sec. 5. That all natives of Porto Rico who were temporarily absent from that island on April 11, 1899, and have since returned and are permanently residing in that island, and are not citizens of any foreign country, are hereby declared, and shall be deemed and held to be, citizens of the United States."

This act, known as the Jones Act, was considered in Balzac v. People of Porto Rico, 258 U. S. 298, 42 S. Ct. 343, 66 L. Ed. 627, and the Supreme Court said that the act did not have for its purpose an incorporation of the island into the Union. It pointed out that it does not contain any clause which declares such purposes or effect, and then said:

"While this is not conclusive, it strongly tends to show that Congress did not have such an intention. Few questions have been the subject of such discussion and dispute in our country as the status of our territory acquired from Spain in 1899. The division between the political parties in respect to it, the diversity of the views of the members of this court in regard to its constitutional aspects, and the constant recurrence of the subject in the houses of Congress, fixed the attention of all on the future relation of this acquired territory to the United States. Had Congress intended to take the important step of changing the treaty status of Porto Rico by incorporating it into the Union, it is rea-

sonable to suppose that it would have done so by the plain declaration, and would not have left it to mere inference."

Section 41 of the Jones Act (Act March 2, 1917, c. 145, 39 Stat. 965) provides that the District Court of the United States for Porto Rico shall have jurisdiction of the naturalization of aliens and Porto Ricans, and for this purpose residents in Porto Rico shall be counted in the same manner as residents elsewhere in the United States. Title 8, U. S. Code, § 358; 8 USCA § 358. It thus appears by analogy that it requires legislation by Congress which would amount to incorporation of the territory into the Union. In the treatment of the question of residents, it likewise requires similar legislation as, in the case of Porto Rico, before residents in the Philippine Islands may be regarded as in the United States.

However unhappy the result, the residence of this appellee in the Philippine Islands may not be regarded as residence during the necessary five-year period in the United States, before his grant of citizenship.

Order reversed.