23 C.C.P.A. (Customs)

## PORTO RICO BROKERAGE CO., Inc., et al. v. UNITED STATES.

Customs Appeal No. 3666.

Court of Customs and Patent Appeals.
Jan. 6, 1936.

For former opinions, see 76 F.(2d) 605; 71 F.(2d) 469.

James R. Beverly, Jesus A. Gonzalez, and Ryder Patten, all of San Juan, P. R., for appellants.

Joseph P. Jackson, Asst. Atty. Gen. (Charles D. Lawrence, Sp. Asst. to the Atty. Gen., and William Cattron Rigby, Sp. Atty., of Washington, D. C., of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court.

The cause was originally decided by this court on June 12, 1934—22 C.C.P.A. (Customs) 236, T. D. 47156, 71 F.(2d) 469. Due to certain legislation subsequently enacted by the Congress, a petition by the government for a rehearing was granted, and the cause was again decided on April 19, 1935, the court adhering to its orig-

inal decision—23 C.C.P.A. (Customs) — T. D. 47672, 76 F.(2d) 605.

We deem it unnecessary to restate all of the facts relative to the issues presented to the court at the time the cause was originally presented, and at the time it was submitted subsequent to the granting of the government's petition for rehearing, as such facts were fully set forth in our previous decisions. It is sufficient to say here, as we said in those decisions, that certain coffee brought into the port of San Juan, Porto Rico (now Puerto Rico, 47 Stat. 158, c. 190 [48 U.S.C.A. § 731a]), from continental United States during the months of February, March, and April, 1931, was assessed for duty by the United States Collector of Customs at that port at 10 cents per pound under and by virtue of the provisions, as construed by him, of Joint Resolution No. 59, adopted by the Legislature of Puerto Rico, *approved by the Governor May 5, 1930,* and section 319 of the Tariff Act of 1930, *enacted June 17 of that year* (19 U.S.C.A. § 1319).

The importers protested, claiming that the merchandise was not subject to duty, and that the duties assessed by the collector were without authority of law.

The trial court overruled the protests, and the importers appealed to this court.

Joint Resolution No. 59, and section 319, supra, read, respectively, as follows:

*"Joint Resolution to Impose an Import Duty on Foreign Coffee Brought Into Porto Rico, and for Other Purposes.*

"Whereas, As a result of the hurricane of September 13, 1928, the coffee industry suffered losses estimated at seventy-five per cent, and one-fourth of the rural population of Porto Rico was reduced to a condition of misery;

"Whereas, The lands devoted to the cultivation of coffee are, due to their hilly nature, unsuitable for the employment of mechanical means of cultivation, and the enforced use of manual labor increases the cost of production to such an extent that it makes it impossible to compete in price with *other coffee exporting countries;*

"Whereas, The prices now prevailing in the world market are ruinous to such an essentially Porto Rican industry, and, in the absence of tariff protection, the industry would very soon disappear;

"Whereas, An act is now pending approval by the Congress of the United States, which authorizes the Legislature

of Porto Rico to impose a duty of ten cents on every pound of *foreign coffee imported into Porto Rico;*

"Now, Therefore, Be it resolved by the Legislature of Porto Rico:

"Section 1. From and after August 1, 1930, an import duty of ten cents a pound is hereby levied on all coffee imported into Porto Rico, such duty to be collected by the Federal Customs Service established in Porto Rico, according to such regulations as said Service may prescribe.

"Section 2. All laws or parts of laws in conflict herewith are hereby repealed.

"Section 3. This Act shall take effect as soon as any act is approved by the United States Government, whereby the Legislature of Porto Rico is authorized to impose an import duty on all coffee brought into this Island." (Italics, except for title, ours.)

"Sec. 319. *Duty on coffee imported into Porto Rico.* The Legislature of Porto Rico is hereby empowered to impose tariff duties upon coffee imported into Porto Rico, including coffee grown in a foreign country coming into Porto Rico from the United States. Such duties shall be collected and accounted for as now provided by law in the case of duties collected in Porto Rico."

In our original decision, on the authority of the cases therein cited, we held that the Legislature of Puerto Rico did not have the power, at the time it adopted Joint Resolution No. 59, to levy a tax on coffee "coming into" that territory from the United States; that unless the Congress intended by the provisions of section 319, supra, to validate the joint resolution, the involved taxes were illegally assessed; that the joint resolution was void for want of constitutional power to adopt it; that it was not validated by a subsequent amendment—section 319, supra —to the Organic Act, 39 Stat. 951 (48 U. S.C.A. § 731 et seq.) establishing a civil government for Puerto Rico, which did not ratify and confirm it, but merely authorized the enactment of such legislation; and that, therefore, the involved duties were unlawfully assessed.

Subsequent to our original decision, the Congress, on June 18, 1934, enacted the following legislation:

"An Act

"Providing for the ratification of Joint Resolution Numbered 59 of the Legislature of Puerto Rico, approved by the Governor May 5, 1930, imposing an import duty on coffee imported into Puerto Rico.

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the taxes and duties imposed by Joint Resolution Numbered 59, enacted by the Legislature of Puerto Rico and approved by the Governor of Puerto Rico May 5, 1930, are legalized and ratified, and the collection of all such taxes and duties made under or by authority of such Joint Resolution of the Puerto Rican Legislature is legalized, ratified, and confirmed as fully to all intents and purposes as if the same had, by prior Act of Congress, been specifically authorized and directed." 48 Stat. 1017.

In our second decision, from which the Presiding Judge and Bland, J., dissented, we stated that the act of June 18, 1934, 48 Stat. 1017, ratified, confirmed, and legalized the collection of all taxes and duties imposed by and collected under or by authority of Joint Resolution No. 59, and, in support thereof, cited the case of Rafferty v. Smith, Bell & Co., 257 U.S. 226, 42 S.Ct. 71, 66 L.Ed. 208; that, from a consideration of the ratifying act and its legislative history, it was the purpose of the Congress to ratify and legalize such taxes and duties only as were collected under and by virtue of the authority of Joint Resolution No. 59; and that as the ratifying act did not, for the purpose of ratification, construe Joint Resolution No. 59, its construction was a matter for the courts. We construed the joint resolution as providing for a duty of 10 cents per pound on coffee *imported* into Puerto Rico from foreign countries only, and, on the authority of De Lima v. Bidwell, 182 U. S. 1, 21 S.Ct. 743, 45 L.Ed. 1041; Dooley v. United States, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074; Dooley v. United States, 183 U.S. 151, 22 S.Ct. 62, 46 L. Ed. 128; Fourteen Diamond Rings v. United States (The Diamond Rings), 183 U.S. 176, 22 S.Ct. 59, 46 L.Ed. 138; Faber v. United States, 221 U. S. 649, 31 S.Ct. 659, 55 L.Ed. 897; Burnet v. Chicago Portrait Co., 285 U.S. 1, 6, 52 S.Ct. 275, 76 L.Ed. 587, held that as Puerto Rico was a "dependency or possession" of the

United States, the United States was not a foreign country. We concluded, therefore, that the unauthorized imposition and collection of the involved taxes or duties by the collector was not ratified and legalized by the act of June 18, 1934, and that appellants were entitled to restitution.

On July 31, 1935, the government filed a petition for rehearing, wherein the attention of the court was called to the fact that legislation was then pending before the Congress to meet the second decision of this court, and, among other things, to ratify and legalize the collection of the taxes involved in this case. Thereafter, on August 20, 1935, 49 Stat. 664 (19 U.S. C.A. § 1319a), the Congress enacted the following legislation:

"(Public Resolution—No. 51—74th Congress).

"(H. J. Res. 290)

"Joint Resolution

"To amend an act entitled 'An Act providing for the ratification of Joint Resolution Numbered 59 of the Legislature of Puerto Rico, approved by the Governor May 5, 1930, imposing an import duty on coffee imported into Puerto Rico,' approved June 18, 1934.

"Whereas in enacting the Act approved June 18, 1934, ratifying the taxes and duties imposed by Joint Resolution Numbered 59 enacted by the Legislature of Puerto Rico, and approved by the Governor of Puerto Rico May 5, 1930, the Congress understood and intended in ratifying such Joint Resolution Numbered 59 of the Legislature of Puerto Rico that the 'import duty' thereby and by subsequent acts of the Legislature of Puerto Rico 'levied on all coffee imported into Puerto Rico' included and was intended to be levied upon all coffee brought into Puerto Rico whether from a foreign country or from any State, Territory, district, or possession of the United States, or other place subject to its jurisdiction; Therefore be it

"*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Act of Congress entitled 'An Act providing for the ratification of Joint Resolution Numbered 59 of the Legislature of Puerto Rico, approved by the Governor May 5, 1930, imposing an import duty on coffee imported into Puerto Rico,' approved June 18, 1934, be, and it is hereby, amended so as to read as follows:

" 'That the taxes and duties imposed by the Legislature of Puerto Rico by Joint Resolution Numbered 59 approved by the Governor of Puerto Rico May 5, 1930, and by Act Numbered 77 approved by the Governor of Puerto Rico May 5, 1931, as amended by Act Numbered 7 approved by the Governor April 9, 1934, including therein such taxes and duties on coffee heretofore or hereafter brought into Puerto Rico from any State or Territory or district or possession of the United States, or other place subject to the jurisdiction of the United States, are legalized and ratified, and the collection of all such taxes and duties made under or by authority of either of said acts of the Puerto Rican Legislature, including such taxes and duties on coffee heretofore or hereafter brought into Puerto Rico from any State, Territory, district, or possession of the United States, or other place subject to the jurisdiction of the United States, is legalized, ratified, and confirmed as fully to all intents and purposes as if the same had, by prior Act of Congress, been specifically authorized and directed.' "

On September 18, 1935, the government filed in this court a supplemental memorandum, relative to its petition for rehearing, calling the court's attention to Public Resolution No. 51, hereinbefore quoted. Due to the enactment of Public Resolution No. 51, the petition by the government for rehearing was granted on October 23, 1935, and the cause was again submitted to the court on December 2, 1935.

It is contended by counsel for appellants that Public Resolution No. 51, supra, indicates a purpose of the Congress to do one or the other of two things, neither of which is within its power. First, it is either an attempt to interpret a statute—Joint Resolution No. 59 of Puerto Rico—contrary to an interpretation placed thereon by this court, or, second, it is an attempt to impose retroactively a tax or duty on coffee brought into Puerto Rico from the United States.

With regard to the first alternative, counsel for appellants urge the applicability of the principle, clearly and forcefully announced in the following cases, that the Congress does not have the power to declare what the law has been, but rather what it shall be: Ogden v. Blackledge, 2 Cranch, 272, 2 L.Ed. 276; Postmaster-

General v. Early, 12 Wheat. 136, 6 L.Ed. 577; Koshkonong v. Burton, 104 U.S. 668, 26 L.Ed. 886; United States v. Salberg (D.C.) 287 F. 208; Ogden 'v. Witherspoon, 18. Fed.Cas. page 618, No. 10,461; Union Iron Co. v. Pierce et al., 24 Fed. Cas. page 583, No. 14,367; Titusville Iron-Works v. 'Keystone Oil Co., 122 Pa. 627, 15 A. 917, 1 L.R.A. 361; Meyer v. Berlandi, 39 Minn. 438, 40 N.W. 513, 1 L.R. A. 777, 12 Am.St.Rep. 663; Lindsay v. United States Savings & Loan Ass'n, 120 Ala. 156, 24 So. 171; Baird v. Burke County, 53 N.D. 140, 205 N.W. 17; State v. Parsons, 206 Iowa, 390, 220 N.W. 328; Bankers' Trust Co. v. Russell, 263 Mich. 677, 249 N.W. 27; Caylor v. State, 219 Ala. 12, 121 So. 12; State ex rel. v. Barron, 136 Kan. 324, 15 P.(2d) 456. See Cooley on Constitutional Limitations (7th Ed.) p. 137.

As to the second alternative, it is urged that the Congress does not have the power to impose retroactively a tax or duty on goods previously lawfully imported free from any such tax; and that the imposition of such tax violates the Fifth Amendment, and is contrary to the principles announced in the cases of Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L. Ed. 1184, 52 A.L.R. 1081; Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S. Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L. Ed. 645; Graham & Foster v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415.

█ Although the body of Public Resolution No. 51 is not free from ambiguity, we think it is clear, when considered in connection with its preamble, that it was the purpose of the Congress, among other things, to construe Joint Resolution No. 59, adopted by the Legislature of Puerto Rico, as providing for the imposition of a tax or duty of 10 cents per pound on all coffee subsequently *imported* into Puerto Rico, including coffee grown in a foreign county *coming into* Puerto Rico from the United States (see section 319 [19 U.S. C.A. § 1319], supra), and to ratify, confirm, and legalize the imposition and collection of all taxes and duties imposed and collected in accordance with such construction, including the taxes or duties here involved.

The Congress evidently was of opinion that the collector assessed the taxes or duties here under consideration in harmony with the congressional construction of Joint Resolution No. 59. This being so, we think it is clear that the primary purpose of the public resolution was to ratify, confirm, and legalize, so far as the issues here are concerned, the imposition and collection of the involved taxes or duties, and not merely to construe the joint resolution, which, of course, is a judicial function, as counsel for appellants have so aptly stated.

The collector at the port of San Juan, Puerto Rico, was a duly accredited representative or agent of the government of the United States, and, in the imposition and collection of the involved duties, acted as such representative or agent. Obviously then, under the well-established principles of ratification, the act of the Congress—Public Resolution No. 51—ratifying the imposition and collection of such taxes by the collector, is equivalent to a prior authority. That the Congress has such power is no longer an open question. United States v. Heinszen & Co., 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098, 11 Ann. Cas. 688; Rafferty v. Smith, Bell & Co., supra.

Accordingly, we must hold that the well-established principles of law invoked by counsel for appellants have no application to the issues here presented, and that Public Resolution No. 51 ratified and legalized .the imposition and collection of the taxes here involved.

For the reasons stated, the judgment is affirmed.

Affirmed.