## MIRANDA v. PEOPLE OF PUERTO RICO.

### No. 3324.

Circuit Court of Appeals, First Circuit.
Dec. 28, 1938.

Rafael Soltero Peralta, of San Juan, P. R. (Juan Lastra, of San Juan, P. R., on the brief), for appellant.

William C. Rigby, of Washington, D. C. (B. Fernandez Garcia, Atty. Gen., and Nathan R. Margold, of Washington, D. C., on the brief), for the People of Puerto Rico.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

WILSON, Circuit Judge.

This is an appeal, by the defendant, from a judgment of the Supreme Court of Puerto Rico affirming judgments of the District Court of San Juan.

The defendant in the month of March, 1934, was convicted in the Municipal Court in the second section of the Municipal Judicial District of San Juan of a violation of section 3 of Act No. 77 of May 5, 1931. The charge in the complaint being as follows:

"That in the month of March, 1934, and in San Juan, Puerto Rico, of the Municipal Judicial District of San Juan, Puerto Rico, which forms part of the Judicial District of San Juan, Puerto Rico, the said defendant, unlawfully, maliciously, and willfully and with the intention of defrauding the Treasury of Puerto Rico, imported through the port of San Juan, Puerto Rico, 3,380 pounds of foreign coffee without paying the import duty of 15 cents per pound established by Section 1 of Act No. 77 of May 5, 1931."

On appeal to the District Court for the Judicial District of San Juan, the defendant, on a trial de novo, on December 12, 1934, was found guilty of a violation of the statute above referred to, as amended by Act No. 7 of April 9, 1934, and was sentenced to pay a fine of $100, and three months in jail. The defendant thereupon appealed to the Supreme Court of Puerto Rico, which court affirmed the judgment and sentence of the District Court, and on April 19, 1937, an appeal was taken by the defendant to the United States Circuit Court of Appeals for the First Circuit.

Section 3 of Act No. 77 of May 5, 1931, as amended by Sec. 4 of Act No. 7 of April 9, 1934, is as follows:

"Every natural or artificial person who imports coffee into Porto Rico after this Act takes effect, and who fails to pay the duties prescribed in section 1 hereof, shall be guilty of misdemeanor, and, upon conviction, shall be punished by a fine of not less than $100 nor more than $1000 and three months in jail; * * *" for the first offense.

The defendant contends (1) that the words, "imports coffee", in section 3 of this statute means coffee imported from foreign countries, and (2) that the Joint Resolution No. 59, approved by the Governor of Puerto Rico May 5, 1930, p. 742, imposing a duty on foreign coffee, was not in force in March, 1934, when it was alleged the defendant's offense was committed, since it did not take effect until ratified by the Congress of the United States, and it was not ratified by Congress until June 18, 1934, 48 Stat. 1017, 19 U.S.C.A. § 1319a.

The statutes applying to the situation are as follows: Sec. 319 of the Tariff Act of 1930, 19 U.S.C.A. § 1319, provides that:

"The Legislature of Puerto Rico is hereby empowered to impose tariff duties upon coffee imported into Puerto Rico, including coffee grown in a foreign country coming into Puerto Rico from the United States."

Act No. 77 of May 5, 1931, quoted above, was evidently passed by the Puerto Rico Legislature in view of this authority. It was not brought to the attention of this court that any question has ever been raised as to the validity of this Act or that its validity depended upon its ratification by the Congress of the United States.

A point is made by counsel for the defendant that the Joint Resolution No. 59 and Act No. 77 merely imposed a duty on

foreign coffee and punished one who imported foreign coffee into Puerto Rico, and that the word "import", as used therein related only to merchandise brought in from a foreign country and did not impose a duty on coffee grown in a foreign country which came into Puerto Rico from the United States.

The Federal Customs officials at Puerto Rico and the insular officials found that the intent of the legislators in the use of the words, "import" and "coffee", as used in these Acts and Joint Resolutions, should be more clearly defined; and the Puerto Rican legislature, in Act No. 7 of April 9, 1934, amending Act No. 77 of May 5, 1931, defined therein the word, "coffee", and declared that, "when used in this Act, includes coffee that is raw, roasted, ground or mixed with other kinds of coffee imported from any foreign country or from the United States or from its possessions".

■ The Joint Resolution of Congress of August 20, 1935, 19 U.S.C.A. § 1319a, evidently was also intended as an interpretive Act, as well as an Act of ratification. It made clear that all of the articles on which import duties were intended by Congress to be imposed in the prior Joint Resolution of May 5, 1930, as ratified by Congress on June 18, 1934, and the Act of the Puerto Rican Legislature of May 5, 1931, as amended by Act No. 7 of April 9, 1934, included "coffee brought into Puerto Rico from any state, territory, district or possession of the United States;" and, as thus construed, Congress again approved and ratified the Joint Resolution of May 5, 1930, and Act No. 77 of May 5, 1931, as amended by Act No. 7 of April 9, 1934, (49 Stat. 664, 665, 19 U.S.C.A. § 1319a) which Joint Resolution provides as follows:

"Whereas in enacting the Act approved June 18, 1934, ratifying the taxes and duties imposed by Joint Resolution Numbered 59 enacted by the Legislature of Puerto Rico, and approved by the Governor of Puerto Rico May 5, 1930, the Congress understood and intended in ratifying such Joint Resolution Numbered 59 of the Legislature of Puerto Rico that the 'import duty' thereby and by subsequent acts of the Legislature of Puerto Rico 'levied on all coffee imported into Puerto Rico' included and was intended to be levied upon all coffee brought into Puerto Rico whether from a foreign country or from any State, Territory, district, or possession of the United States, or other place subject to its jurisdiction: Therefore be it Resolved * * * That the Act of Congress entitled 'An Act providing for the ratification of Joint Resolution Numbered 59 of the Legislature of Puerto Rico, approved by the Governor May 5, 1930, imposing an import duty on coffee imported into Puerto Rico', approved June 18, 1934, be, and it is hereby, amended so as to read as follows:

" 'That the taxes and duties imposed by the Legislature of Puerto Rico by Joint Resolution Numbered 59 approved by the Governor of Puerto Rico May 5, 1930, and by Act Numbered 77 approved by the Governor of Puerto Rico May 5, 1931, as amended by Act Numbered 7 approved by the Governor April 9, 1934, including therein such taxes and duties on coffee heretofore or hereafter brought into Puerto Rico from any State or Territory or district or possession of the United States, or other place subject to the jurisdiction of the United States, are legalized and ratified, and the collection of all such taxes and duties made under or by authority of either of said acts of the Puerto Rican Legislature, including such taxes and duties on coffee heretofore or hereafter brought into Puerto Rico from any State, Territory, district, or possession of the United States, or other place subject to the jurisdiction of the United States, is legalized, ratified, and confirmed as fully to all intents and purposes as if the same had, by prior Act of Congress, been specifically authorized and directed.' "

■ Inasmuch as coffee during the period covered by these several Acts and Joint Resolutions came into the United States free of duty, a statute imposing a duty only on foreign grown coffee, but not on coffee brought into Puerto Rico from the United States would be futile, since foreign coffee could be brought into the United States free of duty and transshipped to Puerto Rico from the United States without payment of duty. Such could not be held to be the intent of Congress or of the Puerto Rican Legislature which enacted these acts.

■ While it is true that Joint Resolution No. 59 was not to become effective until it was ratified by Congress (48 Stat. 1017), (and see Sancho v. Valiente & Company, 1 Cir., 93 F.2d 327, decided by this court on December 8, 1937, and Sancho, Treasurer, v. Acevedo, 1 Cir., 93 F.2d 331), it is obvious that it has nothing to do with this

case, since the complaint was not made under it, nor does it make any reference to it.

The amendments of 1934 and 1935 above referred to were not essential to the validity of the conviction of the defendant. The Act No. 77 of May 5, 1931, was clearly in force at the time the offense was committed, and, while the evidence is not before us, the District Court found that it "tended to show that on April 10, 1934, in the ward of 'Las Vegas,' Municipality of Barranquitas, several revenue agents seized in the house of the defendant forty-two empty bags of coffee, eight wooden boxes and a quantity of coffee. The bags were marked in such a manner as to show that the same came from Brazil. The defendant told the Internal Revenue agents that he imported the same and that that was his business. The coffee thus seized by the agents weighed over 5000 pounds."

■ These admissions of the defendant constituted direct evidence of the commission of the offense charged. Additional evidence of the commission of the offense was also found by the District Judge from the evidence before him.

■ While the defendant denies the effect of the evidence from which the District Judge drew his conclusion of guilt, he produced no evidence to contradict it, nor did he bring before the appellate court the exhibits and testimony on which the District Court based his finding of guilt. This court cannot conclude the District Judge found the defendant guilty without evidence before him to warrant it.

■ The Supreme Court affirmed the judgment and order of the District Court, and the presumption is that the record of the District Court, including so much of a transcript of the evidence, with the exhibits, as is required by Sec. 299 of the Code of Civil Procedure (Ed. 1933), was brought before the Supreme Court on appeal.

If the findings of the District Court were based on evidence before it, it is evident that it matters not whether Act No. 77 of May 5, 1931, as amended by Sec. 3 of Act No. 7 of April 9, 1934, had been approved and ratified by the Congress of the United States at the time of his conviction, it being then in force, since it was expressly authorized by Sec. 319 of the Tariff Act of 1930, 30 U.S.C.A. § 1319. The coffee seized was admitted by the defendant to have been imported by him, and from this and the inferences to be drawn from the markings on the bags and boxes in which it was obviously imported into Puerto Rico, the District Court was warranted in concluding that it had its origin in Brazil. If it was merely transferred from the ship in which it was transported from Brazil in New York Harbor to a ship connecting with San Juan in Puerto Rico, it was imported within the meaning of that word from a foreign country in Puerto Rico.

■ Whether the Organic Act of 1900, 31 Stat. 77, 48 U.S.C.A. § 731 et seq., or the Organic Act of 1917, 39 Stat. 951, 48 U.S.C.A. § 731 et seq., authorized the levying of duties on coffee imported into Puerto Rico would be immaterial, since Section 319 of the Tariff Act of 1930 was enacted by Congress with the same legislative authority that it had when it passed the Organic Acts above referred to, authorizing the legislature of Puerto Rico to pass an act imposing duties on coffee raised in a foreign country and coming into Puerto Rico from the United States. It was by virtue of this express authority that Act No. 77, approved May 5, 1931, was passed by the Puerto Rican Legislature, though in terms it only provided for a duty on foreign coffee imported into Puerto Rico.

■ The defendant also contends that the charge that the importation without paying the duty of fifteen cents per pound was done with intent to defraud the treasurer of Puerto Rico was not sustained, as the duties, if paid, were to be collected by the United States Customs officers; but it is provided by Sec. 4 of the Act of April 12, 1900, 48 U.S.C.A. § 740, and Sec. 58 of the Organic Act of 1917, 39 Stat. 968, that tariff duties, including duties on importations into Puerto Rico, are, when collected, transferred into the local treasury of Puerto Rico.

■ It is suggested, and with force, that the word "import," in its Spanish and English usuage, is broad enough to cover merchandise brought into Puerto Rico from the United States and vice versa. Gallardo v. Questell, 1 Cir., 29 F.2d 897, 898; Downes v. Bidwell, 182 U.S. 244, 287, 21 S. Ct. 770, 45 L.Ed. 1088; United States v. Heinszen & Co., 206 U.S. 370, 381, 27 S. Ct. 742, 51 L.Ed. 1098, 11 Ann.Cas. 688.

While the United States Court of Customs and Patent Appeals held in the case of Porto Rico Brokerage Co. v. United States, 76 F.2d 605, 610, 611, that the word "import" was not broad enough to include for-

eign coffee coming into Puerto Rico through the United States, on a second petition for a rehearing there was filed a memorandum by the government pointing out the continuous use in Spanish legislation of the word "importar," and its derivations covering and including importation to and from the various Spanish colonies and the mother country of Spain. Upon the second hearing, the former decision of the Court of Customs and Patent Appeals was withdrawn and the collection of the duties was upheld without passing upon the meaning of the word "importar." Cust. & Pat. App., 80 F.2d 521.

While this decision of the Court of Customs and Patent Appeals is not conclusive on the issue here, it indicates that the word "importar," as used in the Spanish legislative acts, covers goods brought into Puerto Rico from the United States, as well as from foreign countries, as Congress by the Act of June 18, 1934, and the Joint Resolution of August 20, 1935, indicates.

Whenever the Supreme Court of Puerto Rico has interpreted these local statutes, unless clearly contrary to the decisions of the United States Supreme Court or Acts of Congress, or its interpretation are clearly wrong, this court will follow the construction of the insular court.

The judgment of the Supreme Court of Puerto Rico is affirmed.