## In re HILDEN.

District Court, S. D. New York.

May 23, 1945.

W. F. Watkins, of New York City, District Director, Immigration and Naturalization Service.

Rolnick & Asofsky, of New York City, for petitioner.

RIFKIND, District Judge.

The petitioner has for more than one year, during the five year period immediately preceding the filing of his petition for naturalization, been absent from the United States. His departure was voluntary but the prolongation of his absence was involuntary. He never abandoned his "residence" in the United States. Is he qualified to be admitted to citizenship? The precise question has never been passed upon under the statute now in effect. 8 U.S.C.A. § 707. Does involuntary absence from the United States constitute absence within the meaning of the stat-

ute which prescribes that "absence from the United States for a continuous period of one year or more * * * shall break the continuity of such residence?"

Congress has on several occasions re-examined the residence requirements of admission to citizenship. The Act of March 3, 1813, § 12, 2 Stat. 811, denied citizenship to anyone "who shall not for the continued term of five years next preceding his admission * * * have resided within the United States, *without being at any time during the said five years, out of the territory of the United States.*" This requirement of continued physical presence within the country was abandoned by the Amendment of June 26, 1848, 9 Stat. 240, by which the italicized words were stricken out.

In 1906 the statute was again revised. The Act of June 29, 1906, § 4, subd. 4, 34 Stat. 598, provided: "It shall be made to appear to the satisfaction of the court * * * that immediately preceding the date of his application he has resided continuously within the United States five years at least * * *."

This statute was considered by the Circuit Court of Appeals of the Second Circuit in Neuberger v. United States, 2 Cir., 1906, 13 F.2d 541. It held that the residence of the applicant, once established, was not lost by his enforced absence. The cases which followed treated the question, whether the required residence had been broken by absence, as a question of fact. In re Schradieck, 2 Cir., 1928, 29 F.2d 24; Hantzopoulos v. United States, D.C., M.D. N.C., 1927, 20 F.2d 146; In re Maver, D.C., S.D.N.Y.1927, 19 F.2d 530; Petition of Schneider, D.C., S.D.N.Y., 1927, 19 F.2d 404.

In 1929 Congress again amended the statute to read (Act of March 2, 1929, § 6(b), 45 Stat. 1513): "No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years and within the county * * * for at least six months, (2) he has resided continuously within the United States from the date of his petition up to the time of his admission to citizenship. * * * 'If an individual returns to the country of his allegiance and remains therein for a continuous period of more than six months and less than one year during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship, the continuity of such residence shall be presumed to be broken, but such presumption may be overcome by the presentation of satisfactory evidence that such individual had a reasonable cause for not returning to the United States prior to the expiration of such six months. Absence from the United States for a continuous period of one year or more during the period immediately preceding the date of filing the petition for citizenship * * * shall break the continuity of such residence'."

I do not know whether the amendment of 1929 was directly prompted by the Neuberger decision; but it seems so. Judge Learned Hand, in that opinion, pointed out the logical consequence of the decision:

"It is true that we must face the consequence that it [the residence] would not have been lost, if he had been absent for the whole preceding five years." 13 F.2d at page 543.

In such a hypothetical case the applicant would not have been exposed, to any considerable degree, to American institutions. Presumably such exposure is one of the objectives of the five year residence requirement.

It seems fairly plain that by the 1929 amendment Congress intended that the doctrine of residence-while-absent should not be driven to such lengths. It placed a year's limit on the permissive period of absence. After the enactment of the 1929 amendment, In re Conis, D.C., S.D.N.Y., 1929, 35 F.2d 960, held that the amendment was not retroactive to applications filed before its effective date. The implication of this holding is that another result would have followed had the 1929 rule been applied. In 1930, In re Ringstad, D.C.,W.D.Pa., 41 F.2d 753, held the continuity of the residence had not been broken where the absence, though of more than a year's duration, occurred after the filing of the petition and before hearing. This result was dictated by the language of the statute. The loophole thus exposed was closed by Congress by the Act of June 29, 1938, 52 Stat. 1247. Moreover, the Act of June 25, 1936, 49 Stat. 1925, exempted certain government employees and certain persons engaged in research and foreign commerce from the one year absence provision; and this exemption was very rigidly restricted by the Act of June 29, 1938, 52 Stat. 1247.

In the light of this history, I am of the view that absence for a continuous period of one year or more, during the period for which continuous residence is required for admission. to citizenship, breaks the continuity of the residence unless the applicant brings himself within the. express exceptions enumerated in the statute. The involuntary character of the absence is not among the enumerated circumstances which afford exemption from the requirement. The argument that involuntary absence is not absence might more successfully be advanced if we were writing on a clean slate. The legislative history to which I have alluded precludes such construction. The Neuberger case did not rest on the proposition that enforced absence was not absence. On the contrary, it held that under the language of the statute then in effect, notwithstanding the absence, residence was not lost.

After that case, the possibility of involuntary absence could not have been overlooked. Congressional silence must, therefore, be construed to mean that Congress chose not to extend to persons so situated the special privileges it extended to government employees and certain other persons. It is not for the courts to supply that which Congress omitted.

The facts of the case supply a strong motive to find a way to grant this applicant's petition; but I find myself powerless to do so. The petition is denied.